BENJAMIN ALLI
January 5, 2005

responsibility and what code had approval of the flexible loan or alternative to flexible loan, give the code to me. Code, I think it's a three digit code. I have it in my handbook. I can give it to you.

Q. Who at HUD refused to give you the application for a flexible loan?

A. Mr. Roger Hill and the other guy that I talked to.

Q. Do you remember his name?

A. Maybe if I search my records somewhere.

Q. Dr. Alli?

A. Yes, ma'am.

Q. How many Deeds of Trust did you enter into encumbering the Collingwood apartments during the time that you owned and managed the Collingwood apartments?

A. I do not remember now, because each time they came and they give us this list of what I have to repair in the building, and we have to need money. We cannot afford the money from our own personal savings, we have to loan money because it's a business.

Q. How many Deeds of Trust did you enter into encumbering the Collingwood apartments -- strike that.

How many Deeds of Trust did you enter into with your mother-in-law encumbering the Collingwood apartments?

A. I do not remember.
Q. Was there more than one?
A. Possible one, two, I don't remember.
Q. Did you receive a written approval from HUD to enter into a Deed of Trust encumbering the Collingwood apartments?
A. HUD don't issue anything approval. You talk to them on the phone. They will not give it to you in writing. They just tell you on the phone, and that's the maximum you can go to, not only me, anyone dealing with them.
Q. Is your answer no, that you did not receive approval?
A. What that comes to, I'm just telling you that question cannot be answered by no. They don't response in writing to anything at all.
Q. I'll ask it again. Did you receive an approval from HUD in writing approving your entering into a Deed of Trust with your mother-in-law encumbering the Collingwood apartments?
MR. STEMPIEN: Before you answer, I'm going to put an objection on the record that there's nothing been established that it was required that he receive written approval before entering into this document. With that objection, go ahead and answer.
A. Yeah, I was not provided any written information, but

BENJAMIN ALLI
January 5, 2005

to catch it or a glue tip. We have glue tip, we buy in dozens from Home Depot, one of the big outlet here. We put a glue tip around so they have children, so to make sure that the kids don't get their hands into the trap.

Q. Referring back to Exhibit Number 20, the Deed of Trust?

A. Yeah.

Q. Did you ever make any payments on this Deed of Trust to Ms. Abegby?

A. Well, maybe couple of, maybe couple of payments. We never make all the payments because we have a hard time with payments.

Q. Where did the money from the payments come from?

A. It comes from the project account.

Q. Did you say the project account?

A. Uh-huh.

Q. You mentioned that there were also Deeds of Trusts with Ms. Abegby's encumbering the Riverside apartments; is that correct?

A. Yes, ma'am.

Q. On those Deed of Trusts, did you make any payments on those?

A. A few payments, yeah.

Q. Where did the money come from for those payments?

BENJAMIN ALLI
January 5, 2005

A. Project account.

Q. You also mentioned that there were Deeds of Trusts with Ms. Abegby that you entered into encumbering the Pingree apartments; is that correct?

A. Yes, ma'am.

Q. Did you make payments on those Deeds of Trust?

A. Few payments, yes.

Q. Where did the money come from for those payments?

A. Project account.

Q. When you say the project account, what are you referring to?

A. Yes, ma'am. Go ahead.

Q. What are -- when you say the project accounts, what account are you referring to?

A. Well, on the HUD handbook, the handbook is 4317.2 revision. The quote that Mr. Malone gave me on the phone for the payment of Ms. Abegbe is code number 2320 and also code number 2310 and said we can pay for those code allowed by HUD.

MS. CONNEELY: I need to have the court reporter mark as Exhibit 21 the following two-page document.

MARKED FOR IDENTIFICATION
DEFENDANT'S EXHIBIT 21
1:30 P.M.

BENJAMIN ALLI
January 5, 2005

Q. It says enclosed is a copy of the physical inspection report, do you see that?
MR. STEMPIEN: Second sentence on the first paragraph.
A. Yes.
BY MS. CONNEELY:
Q. So you do not know whether or not you received a copy of this letter or this -- did you receive a copy of this document?
A. I said more than likely I received it. I said that three times. I said more than likely I received it. I'm only -- the picture you asked me to look at.
Q. What did you do after you received this letter?
A. After I received the letter, the same way I do every time, I go back to the site, because sometimes when they come to the site, they go there. Or before they send it to me, so I have a notebook, I compare with what is sent to me with my notebook, even it be forgery, even misstates it, which they do all the time. So anything that is not here that I do not believe it, I write back to them, and they get upset. But if it's really, really there, we fix it. Because we have people that do work there.
Q. An what is this notebook that you are referring to?
A. My special notebook. Any time I go with them, I got

the special notebook. And a lot of time the HUD procedural handbook states that they must call landlord to be there. 60 percent of the time they don't do that. They go behind my -- then after they come, you see on the tape that I've given to you, you will see where Salazar called me for inspection for next day, that's tomorrow, you don't call somebody for inspection the next day. And if I thought he did that, he deny on the tape that inspection be placed the day before. He tell himself on the same tape, oh, yes, I wasn't, so I saw it came -- they come -- they come not to trust them. So they will call me when they say that, and I say, sir, did you inspect any place yesterday? He said no. Later on, oh, the lady in 104 say you come to her unit. Oh, yes, I did. I said why do you deny before? They're not supposed to be on the premises without me. That's a handbook regulation. Sometimes they just go there behind my back because they want to set me up.

Q. Did you accompany every HUD inspector that inspected the Collingwood Kirkwood apartments on their inspection of the buildings?

A. I don't understand your question.

Q. When a HUD inspector would schedule an inspection of the Collingwood Kirkwood apartments --

A. Uh-huh.
Q. -- would you accompany him?
A. That's what the law said. All handbooks say that, but they don't do that, only for me only. Only for me. Other times they don't, they go behind me first, they did before. I set some up. They call me, they say tomorrow meet us there. HUD regulation does say it has to be mutually agreeable time. That's what the comment said. But they have their own personal handbook in their pocket, and they come in with their own handbook that they give to me, I give to them --
Q. Are you saying the government has a different handbook that they give to you?
A. The one that's manufactured -- that they manufacture, they implement different policy for different people, government don't do that. Government give me handbook, one for everybody.
Q. Who implements different policies for different people?
A. Local HUD. If you don't like someone, they make up stuff.
Q. Who at the local HUD office are you referring to?
A. A lot of the inspectors, except few of them don't do that.
Q. Which?

Q. Do you remember when they inspected the apartments?
A. No.
Q. Which apartment buildings did they inspect?
A. Got to be Riverside Collingwood.
Q. Did Roland Samaroo prepare a written report of his inspection of the Collingwood Kirkwood apartments or the Riverside apartments?
A. Very likely.
Q. Did you turn over a copy of that report to your counsel in this case?
A. I don't know.
Q. I'd like to ask the court reporter to mark this as Exhibit 31.

MARKED FOR IDENTIFICATION
DEFENDANT'S EXHIBIT 31
3:21 P.M.

BY MS. CONNEELY:
Q. Have you seen this letter before?
A. Yes, ma'am.
Q. Did you receive a copy of this letter?
A. Yes.
Q. Please refer to the paragraph marked as number two on the first page of the letter.
A. Uh-huh.
Q. That paragraph talks about a second loan --

A. Uh-huh.
Q. -- that was taken encumbering the Collingwood Kirkwood apartments?
A. Uh-huh.
Q. The letter from HUD then asks you to provide evidence that a certain amount of money is repaid to the Collingwood Kirkwood operating account?
A. Uh-huh.
Q. Was that money ever repaid to the account -- strike that.
Did you ever repay this money to the Collingwood Kirkwood operating account?
A. No.
Q. Why?
A. Because the letter's an extortion, it's not true. It's a violation of HUD regulation.
Q. If I can refer you now to the paragraph marked as number three.
A. Uh-huh.
Q. That paragraph talks about a car --
A. Uh-huh.
Q. -- that the Collingwood Kirkwood apartments leased from you --
A. Uh-huh.
Q. -- for a monthly payment of $420. The letter then

states that this was not an eligible project expense and asked you to reimburse the project for a total of $15,120. Did you reimburse the project this amount of money?

A. No.

Q. Did you receive reports from tenants -- strike that.

Did you receive reports of mice from tenants at the Riverside apartments?

A. Reports of mice? What kind of report? Can you elaborate?

Q. Did a tenant at the Riverside apartments ever report to you that they had seen a mouse in the building?

A. No.

Q. Did you ever see any mice at the Riverside apartments?

A. No.

Q. Did you ever exterminate for mice at the Riverside apartments?

A. Yes.

Q. Why?

A. Why? I see holes, we plug the holes, that's what we do. That's the holes anywhere that mice can come, maybe when they're moving, tenants moving the furniture in or the kid playing hard in their room, they break wall. We just ask to repair the wall, that's how we did it.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| BENJAMIN & SHAKI ALLI AND BSA CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 01-669C<br>(Judge Allegra) |

DECLARATION OF KATHLEEN SZYMCZAK

I, Kathleen Szymczak, hereby declare as follows:

1. I currently work as an administrative staff specialist for the United States Department of Housing and Urban Development ("HUD") in Detroit, Michigan. I have held this position since 2003.

2. I have been employed by HUD for over thirty years.

3. Throughout 1999, I worked as a program assistant for HUD's Office of Insured Multi-family in Detroit, Michigan.

4. My job duties as a program assistant included depositing and recording checks submitted to pay fees for various HUD-related applications, including fees for transfer of physical asset applications ("TPA applications").

5. In 1999, when TPA applications were received, it was official office procedure for program managers to forward TPA application fee checks to me.

6. When I received a TPA application fee check, I would follow official office procedures by depositing the check and recording the payment in my check registry.

7. My check registry for 1999, a copy of which is attached to my declaration, shows all HUD-related application fee checks received in connection with TPA applications.

8. My check registry for 1999 shows that no TPA application fee check was ever received by HUD's Detroit office in connection with a TPA application for the transfer of the Collingwood/Kirkwood apartments.

9. My duties as an administrative staff specialist still include depositing and recording checks submitted to pay fees for various HUD-related applications.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 12 day of August, 2005.

Kathleen Szymczak
Kathleen Szymczak
Administrative Staff Specialist
Office of Insured Multi-Family
United States Department of Housing
and Urban Development

**U.S. Department of Housing and Urban Development**

## COLLECTION REGISTER

REGION OR OFFICE: MICHIGAN

REGISTER PAGE NUMBER: 139

| DATE OF REMITTANCE | NAME OF REMITTER | TYPE[1] | AMOUNT | RECEIVED AT MAIL OPENING POINT: DATE | RECEIVED AT MAIL OPENING POINT: NAME | FUND SYMBOL OR DISPOSITION | C.D. NO. | REMARKS |
|---|---|---|---|---|---|---|---|---|
| | NAT'L CHURCH RES | CK | 169.34 | 10/26/98 | Kathy Szymczak | | | # 00300888 EH166 |
| 10-27-98 | PICKWICK PARK | SUB FEE | 6.00 | 10/29/98 | Kathy Szymczak | K. Szymczak | 10/30/98 | #118655 |
| 11-3-98 | P. Kuykendall | SUB FEE | 12.00 | 11/4/98 | Kathy Szymczak | K. Szymczak | 11/4/98 | CK# 5240 WITNESS FEE |
| 11-11-98 | Record Copy Services | SUB FEE | 6.00 | 11-19-98 | Kathy Szymczak | K. Szymczak | 11/20/98 | CK#E 769473 |
| 12-8-98 | Independence Square | | 10,000.29 | 12-10-98 | Kathy Szymczak | L. DeMorado | 12/1/98 | ck 2837 |
| 1/14/99 | Three Oaks | TPA | 2442.30 | 1/14/99 | Kathy Szymczak | D. Plowden | 2/7/99 | ck 002073 |
| 1/28/99 | Sycamore Meadows | Rent Reim. | 30944.00 | 1/28/99 | Kathy Szymczak | B. Kimbell | 1/10/2000 | ck #5725 To LOCK BOX |
| 2/16/99 | LUTH. HSG CORP - ANN ARBOR 044-EED13 | final closing | 303522.15 | 2/22/99 | Kathy Szymczak | K. Szymczak | 3/8/99 | ck # 2038571324108 |
| 3/15/99 | Eden Manor | water damage | 7287.18 | 3/17/99 | Kathy Szymczak | | 3/17/99 | ck#1-04-028535 |
| 3/16/99 | NORTH HILL FARMS | FIRE | 23583.34 | 3/17/99 | Kathy Szymczak | D. Plowden | 5/7/99 | ck-1005695 |
| 3/16/99 | Ukrainian Village | | 13556.86 | 3/18/99 | Kathy Szymczak | L. DeMorado | 3/19/99 | ck#5-04-419684 |
| 3/22/99 | DORIS ALSUP | | 50.00 | 3/22/99 | Kathy Szymczak | K. Szymczak | 3/23/99 | MO 910 2523549 |
| 4/5/99 | UKRAINIAN VILLAGE | ICE | 9618.47 | 4/8/99 | Kathy Szymczak | L. DeMorado | 4/12/99 | ck 419957 |
| | NEXT PAGE | | | | | | | |

COLLECTIONS RECEIVED AS SHOWN ABOVE

(Date) (Signature of Collection Officer)

[1] C - Cash
CK - Check
MO - Money Order
CCK - Certified Check
CACK - Cashiers Check

form HUD-235 (5/89)
ref. handbooks 1911.1 & 4310.5

## COLLECTION REGISTER

U.S. Department of Housing and Urban Development

REGION OR OFFICE: MICHIGAN

REGISTER PAGE NUMBER: 140

| DATE OF REMITTANCE | NAME OF REMITTER | TYPE[1] | AMOUNT | RECEIVED AT MAIL OPENING POINT – DATE | RECEIVED AT MAIL OPENING POINT – NAME | FUND SYMBOL OR DISPOSITION | C.D. NO. | REMARKS |
|---|---|---|---|---|---|---|---|---|
| 4-14-99 | UNIVERSITY TH COOP | SNOW STORM | 7091.80 | 4/16/99 | Kathy Szymczak | P. Wildfong | 4/27/99 | ck #1-04-830022 |
| 4-14-99 | " | " | 9175.66 | 4/16/99 | Kathy Szymczak | P. Wildfong | 4/27/99 | ck 1-04-830017 |
| 4-14-99 | " | " | 7763.82 | 4/16/99 | Kathy Szymczak | P. Wildfong | 4/27/99 | ck #1-04 830031 |
| 4-14-99 | " | " | 8788.55 | 4/16/99 | Kathy Szymczak | P. Wildfong | 4/27/99 | ck #1-04 830021 |
| 4-26-99 | Eden Manor | water damage | 1138.51 | 4/28/99 | Kathy Szymczak | A. Leach | 5/25/99 | ck 504871 979 |
| 5-3-99 | UKRAINIAN VILLAGE | FREEZE DAMAGE | 350.00 | 5/5/99 | Kathy Szymczak | L. DeMerendo | 5-6-99 | ck 1-04-832241 J |
| 4-29-99 | WATRY & MERCIECA | SUB FEE | 12.00 | 5/12/99 | Kathy Szymczak | K. Szymczak | 5/14/99 | ck # 0124 |
| 5-26-99 | Ukrainian Village | | 11443.95 | 6/2/99 | Kathy Szymczak | L. DeMerendo | 6/4/99 | ck #504-41 7664 |
| 6-1-99 | NORTH HILL FARMS | | 23583.34 | 6/3/99 | Kathy Szymczak | H. Plowden | 6/11/99 | ck # 1008142 |
| 6-4-99 | GMAC | PROC FEE | 5694.90 | 6/4/99 | Kathy Szymczak | K. Szymczak | 6/7/99 | ck 013038 Banked |
| 6-4-99 | GMAC | PROC FEE | 5694.90 | 6/7/99 | Kathy Szymczak | [illegible] | 6/8/99 | ck 012747 RET'D - Sent in error |
| 6-8-99 | EDEN MANOR | | 2718.62 | 6/9/99 | Kathy Szymczak | Annie Leach | 7/13/99 | ck 5-04-872-966 |
| 6-10-99 | COBBLE CREEK | FIRE | 407718.00 | 6/11/99 | Kathy Szymczak | L. Suvoy | 6/24/99 | ck # 11597347 |
| 6-21-99 | Wellesley T.H. | water | 16500.81 | 6/24/99 | Kathy Szymczak | W. Kamhill | 11/15/99 | ck 1-8587635 |

COLLECTIONS RECEIVED AS SHOWN ABOVE

(Date)

(Signature of Collection Officer)

[1] C - Cash
CK - Check
MO - Money Order
CCK - Certified Check
CACK - Cashiers Check

form H[illegible]
ref. handbook[illegible]

U.S. Department of Housing and Urban Development

# COLLECTION REGISTER

REGION OR OFFICE: MICHIGAN

REGISTER PAGE NUMBER: 141

| DATE OF REMITTANCE | NAME OF REMITTER | TYPE[1] | AMOUNT | RECEIVED AT MAIL OPENING POINT DATE | RECEIVED AT MAIL OPENING POINT NAME | FUND SYMBOL OR DISPOSITION | C.D. NO. | REMARKS |
|---|---|---|---|---|---|---|---|---|
| 6-25-99 | CHURCH OF CHRIST | FIRM | 29771.70 | 6-25-99 | Kathy Szymczak | B. Szymczak | 6/28/99 | ck #014473 |
| 7-9-99 | Ukrainian Village | Water Damage | 2026.20 | 7-13-99 | Kathy Szymczak | R. Alvarado | 7/14/99 | ck#1-04-798649 |
| 7-2-99 | INITIAL CLOSING West Genesee | closing | 137,907.50 | 7-14-99 | Kathy Szymczak | L. Hornaby | 7/15/99 | ck# 2049-00752317 |
| 7-30-99 | Westwick Square | fire | 407.00 | 7-30-99 | Kathy Szymczak | B. Hambill | 10/1/99 | ck. 1-04-777260 |
| 7-30-99 | Westwick Square | fire | 12395.00 | 7-30-99 | Kathy Szymczak | B. Hambill | 10/1/99 | ck 1-04-777262 |
| 8-2-99 | Bethany Pres | closing | 200969.00 | 8-5-99 | Kathy Szymczak | K. Maloney GMC | 5/8/00 | ck 2049-51166497 |
| 9-7-99 | Nat'l Church Res EE016 | closing | 286265.00 | 9-10-99 | Kathy Szymczak | L. Hornaby | 9/29 | ck 2049 01467740 |
| 9-10-99 | Cobble Creek | fire | 89195.00 | 9-10-99 | Kathy Szymczak | | 9/10/99 | ck #11604019 |
| 9-22-99 | Oakbrook Villa | firm app | 3220.20 | 9/24/99 | Kathy Szymczak | Kelly Allen | 9-27-99 | ck# 023159 |
| 10-4-99 | Townhouse Green | fire | 11360.14 | 10-6-99 | Kathy Szymczak | A. Leach | 11/2/99 | ck #1031760 |
| 12-9-99 | FM ONE - ST. Sarkis | | 3678.88 | 12-10-99 | Kathy Szymczak | R. Nelson | 12/14/99 | ck# 5020443 |
| 12-30-99 | Oakridge | Closing | 35908.00 | 12-30-99 | Kathy Szymczak | Kelly Allen | 1/3/00 | ck#0026889 |
| 12-30-99 | Oakridge | inspect fee | 1920.00 | 12-30-99 | Kathy Szymczak | Kelly Allen | 1/3/00 | ck# 0026885 |
| 1-6-00 | Spring Lake Village | storm damage | 161338.22 | 1/10/00 | Kathy Szymczak | [illegible] | 4/21 | ck#5621354 |

COLLECTIONS RECEIVED AS SHOWN ABOVE

(Date)

(Signature of Collection Officer) Kathy Szymczak

[1] C - Cash
CK - Check
MO - Money Order
CCK - Certified Check
CACK - Cashiers Check

form HUD-235 (5/89)
rel. handbooks 1911.1 & 4310.5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BENJAMIN & SHAKI ALLI AND BSA CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

No. 01-669C
(Judge Allegra)

DECLARATION OF PATRICK BERRY

I, Patrick Berry, hereby declare as follows:

1. I currently work as a supervisory project manager for the United States Department of Housing and Urban Development ("HUD") in Detroit, Michigan.

2. Throughout 1999, I worked as a project manager for HUD's Office of Insured Multi-family in Detroit, Michigan.

3. My job duties as a project manager included processing transfer of physical asset applications ("TPA applications") for the properties that I supervised.

4. One of the properties that I supervised throughout 1999 was the Collingwood/Kirkwood apartments.

5. Pursuant to official office procedure, any TPA application for the Collingwood/Kirkwood apartments submitted in 1999 would have either been sent or forwarded to me for review.

6. As a project manager, I followed the procedures in the HUD

handbook for TPA applications. Accordingly, upon receipt of a complete TPA application, I would distribute a letter to the applicant either acknowledging receipt of a complete application or informing the applicant that his or her application was deficient. When I sent such letters, I would make a copy and include it in HUD's official files.

7. I never received a complete or deficient TPA application for the Collingwood/Kirkwood apartments in 1999.

8. I checked HUD's official files and did not find any record that a TPA application for the Collingwood/Kirkwood apartments was submitted in 1999. I also did not find any record that a letter acknowledging receipt of a completed TPA application or acknowledging receipt of a deficient TPA application was ever sent regarding the Collingwood/Kirkwood apartments in 1999.

9. If HUD had denied a TPA application for the Collingwood/Kirkwood apartments in 1999, I would have followed official office procedures and the HUD handbook by writing a letter to the applicant informing him or her of HUD's denial.

10. I did not write or send a letter to an applicant denying a TPA application for the Collingwood/Kirkwood apartments in 1999.

11. I checked HUD's official files and did not find any record that a letter denying a TPA application for the

Collingwood/Kirkwood apartments was ever sent in 1999.

12. The only document I found in HUD's official files relating to any sale of the Collingwood/Kirkwood apartments in 1999 was a copy of an executed purchase agreement between Benjamin Alli and Cory Fanning.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 15 day of August, 2005.

Patrick Berry

Patrick Berry
Supervisory Project Manager
Office of Insured Multi-family
United States Department of Housing
and Urban Development