IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| BENJAMIN & SHAKI ALLI AND BSA CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 01-669C<br>(Judge Allegra) |

DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT

Pursuant to Rule 56(h) of the Rules of the United States Court of Federal Claims, defendant, the United States, respectfully submits the following proposed findings of uncontroverted fact in support of its motion for partial summary judgment.

1. On or around March 24, 1998, the Department of Housing and Urban Development ("HUD") and plaintiff BSA Corporation entered into a Housing Assistance Payment contract ("HAP contract") for the Collingwood/Kirkwood apartments. App. 86.[1]

2. Plaintiffs Benjamin and Shaki Alli are the owners of BSA

[1] The appendix filed with defendant's motion for partial summary judgment will be cited as "App." followed by the specific page reference.

Corporation. Compl. 2.[2]

3. The HAP contract was renewed by the parties several times, with the last renewal expiring on March 15, 2000. Id. at 102.

4. Paragraph 19(a) of the HAP contract states:

> The Owner agrees that it has not made and will not make any sale, assignment, or conveyance or transfer in any fashion, of this Contract, the Agreement . . . or the project or any part of them or any of its interest in them, without the prior written consent of HUD. However, in the case of an assignment as security for the purpose of obtaining financing of the project, HUD shall consent in writing if HUD has approved the terms of the financing.

Id. at 94.

5. HUD held a mortgage on the Collingwood/Kirkwood apartments. Id. at 104.

6. On or around July 6, 1990, HUD and BSA Corporation entered into a regulatory contract for the Collingwood/Kirkwood apartments ("regulatory contract"). Id.

7. Paragraph 8(a) of the regulatory contract states that plaintiffs "shall not without the prior written approval of [HUD] . . . convey, transfer, or encumber any of the mortgaged property, or permit the conveyance, transfer, or encumbrance of such property." Id. at 105.

[2] Plaintiffs' second amended complaint will be cited as "Compl." followed by the specific page reference.

8. Plaintiffs sought to sell the Collingwood/Kirkwood apartments to Cory Fanning due to the amount of purported repairs. Compl. 5.

9. Section 4350.1, Chapter 13 of the HUD handbook contains the regulations governing Transfer of Physical Assets ("TPA") applications and the TPA review process. Id. at 115.

10. Mr. Benjamin Alli is familiar with the HUD handbook and cited to it several times during his deposition. Id. at 225-37.

11. The regulations provide that a transfer of title to mortgaged property requires a TPA application for a full review by HUD. Id. at 115-20.

12. The regulations list the forms, documents and fees that must be submitted to form a complete TPA application. Id. at 139-49.

13. The regulations provide that a TPA application consists of, among other items, an application fee, TPA application form, purchaser's letter, purchaser's certificate of previous participation form, purchaser's resume, executed but unrecorded regulatory agreement by buyer, purchaser's personal financial statement, proposed rental schedule form, attorney's certification, Byrd Amendment Certification, title report, and executed organizational documents of purchaser. Id.

14. Under the regulations, HUD will only review a completed TPA application. Id. at 145.

15. Once a completed application is submitted, the regulations provide a form letter to be sent to the owner notifying him or her that a complete TPA application was received. Id. at 145, 149.

16. If the deficiencies are not serious, the regulations provide a form letter to alert the applicant that certain documents are missing. Id. at 145, 150.

17. Once a TPA application is reviewed, the regulations provide that HUD will either send the applicant a form letter that the application has been approved or a form letter that the application has been denied. Id. at 146-49, 153-56.

18. HUD never sent plaintiffs anything in writing either approving or denying the sale of the Collingwood/Kirkwood apartments to Cory Fanning. Id. at 243-45.

19. HUD never sent plaintiffs anything in writing that a completed TPA application had been received. Id.

20. Plaintiffs entered into a purchase agreement to sell the Collingwood/Kirkwood apartments to Mr. Fanning without receiving HUD’s approval of the sale. Id. at 113-14.

21. Besides sending a copy of the executed purchase agreement, plaintiffs sent HUD no other documents or forms required for a TPA application under HUD regulations. Id. at 238-45.

22. Plaintiffs never submitted to HUD the required fee to process a TPA application for the sale of the Collingwood/ Kirkwood apartments to Mr. Fanning. Id. at 238-42.

23. Plaintiffs never submitted a complete TPA application for approval of the sale of the Collingwood/Kirkwood apartments to Mr. Fanning. Id. at 238-45.

24. Plaintiffs never submitted a form HUD-922266, the initial TPA application form, for the sale of the Collingwood/ Kirkwood apartments to Mr. Fanning. Id. at 243-45.

25. HUD's check registry for the Detroit office for 1999 shows neither plaintiffs nor Mr. Fanning ever submitted a TPA application fee. Id. at 238-42.

26. Mr. Fanning did not even know the sale of the Collingwood/Kirkwood apartment building required HUD's prior approval. Id. at 217-18.

27. Mr. Fanning never took any steps towards requesting HUD's approval of the sale. Id.

28. Under HUD regulations, a complete TPA application requires items that must be prepared by the proposed buyer and/or requires the proposed buyer's signature. Id. at 239-49.

29. Plaintiffs' listing agent for the Collingwood/Kirkwood apartment building, Gary Hopkins, knew HUD's approval was required, but believed it was Mr. Fanning's responsibility or the responsibility of Mr. Fanning's lender to obtain

HUD's approval. Id. at 198-99.

30. Mr. Hopkins took no steps to obtain HUD's approval, and did not know whether plaintiffs, who were his clients, took any steps to obtain HUD's approval either. Id. at 200-1, 203.

31. Mr. Hopkins was aware that Mr. Fanning was required to submit at least one form to HUD regarding his previous participation in HUD-related projects, but he did not know whether such a form was ever submitted. Id. at 207-8.

32. The purchase agreement between plaintiffs and Mr. Fanning was silent regarding the regulatory contract, the HAP contract and HUD in general. Id. at 113.

33. Section 4350.1, Chapter 13 of the HUD handbook has been in effect since 1992. Id. at 115.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Mark A. Melnick by Frank E. White, Jr.
MARK A. MELNICK
Assistant Director

OF COUNSEL:

Thomas G. Massouras
Office of General Counsel
U.S. Department of Housing &
Urban Development
77 West Jackson Boulevard
Suite 2629
Chicago, Illinois 60604

s/Marla T. Conneely
MARLA T. CONNEELY
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit,
8th Floor
1100 L Street
Washington, D.C. 20530
Tel. (202) 307-1011
Fax. (202) 307-0972

August 15, 2005

Attorneys for Defendant