UNITED STATES OF AMERICA

COURT OF FEDERAL CLAIMS

BENJAMIN ALLI, SHAKI ALLI and
BSA CORPORATION, a Michigan Corporation

Plaintiffs,

Case No. 01-669C
Judge Allegra

vs.

UNITED STATES OF AMERICA,

Defendant.
_______________________________________/

STEMPIEN & STEMPIEN, PLLC
By: Gregory J. Stempien
Eric Stempien
Attorney for Plaintiff
315 N. Center Street, Suite 200
Northville, MI 48167
(248) 735-9200

DEPARTMENT OF JUSTICE, COMMERCIAL LITIGATION
By: Marla Conneely
Attorney for Defendant
1100 L Street N.W., Room 11054
Washington, DC 20005
(202) 307-0318
_______________________________________/

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs, BENJAMIN ALLI, SHAKI ALLI and BSA CORPORATION, by and through their attorneys, STEMPIEN & STEMPIEN, PLLC, hereby moves this Honorable Court to enter an order granting partial summary judgment in favor of Plaintiffs on Defendant's counter claims, pursuant to Court of Federal Claims Rule 56, an in support thereof rely on the attached brief and Proposed Findings of Uncontroverted Fact.

**PROPOSED FINDINGS OF UNCONTROVERTED FACT**

1. The real properties commonly known as: (1) 1730 Magnolia, Detroit, Michigan, (2) 1800 Magnolia, Detroit, Michigan, (3) 1830 Magnolia, Detroit, Michigan and (4) 1831 Hazel, Detroit Michigan are collectively referred to as the "Riverside" property

2. The real properties commonly known as: (1) 1610 Collingwood, Detroit, Michigan and (2) 1635 Calvert, Detroit, Michigan are collectively referred to as the "Collingwood" property.

3. The real properties commonly known as: (1) 2211 Pingree and (2) 2987 Gladstone are collectively referred to as the "Pingree" property.

4. On June 8, 1989, Benjamin Alli, doing business as BSA and Associates, entered into a 15-year housing assistance payments contract (hereinafter "Riverside HAP contract") with the Department of Housing and Urban Development (hereinafter "HUD") for the Riverside property. *See **Exhibit 1** - Defendant's Counter Complaint, paragraph 58 and **Exhibit 2** - Riverside HAP contract*

5. BSA Coporation (hereinafter "BSA") purchased the Collingwood property from HUD on June 8, 1989.

6. At the time of the purchase of the Collingwood property, the housing assistance payment contract (hereinafter "Collingwood HAP contract") for the Collingwood property was assigned to BSA. *See **Exhibit 1** - Defendant's Counter Complaint, paragraph 73 and **Exhibit 3** - Collingwood HAP contract*

7. On August 13, 1999 HUD and BSA entered into an extension of the Collingwood HAP contract, which expired on March 15, 2000. ***Exhibit 4***

8. On August 24, 1983, Benjamin Alli, doing business as BSA and Associates, entered into a housing assistance payments contract (hereinafter "Pingree HAP contract") for the Pingree property. *See **Exhibit 1** - Defendant's Counter Complaint paragraph 103 and **Exhibit 5** - Pingree HAP contract*

9. Following the expiration of the original Pingree HAP contract, Benjamin Alli and HUD entered into a series of extensions, the last one dated March 1, 2000. ***Exhibit 6***

10. Each of the HAP contracts incorporated HUD's Regulatory Agreement, which became part of the contract between the parties. ***Exhibits 2, 3 and 5** - paragraphs 1.5*

11. Each parties'rights and obligations (for all three properties) arise only out of the

HAP contracts and the Regulatory Agreements. ***Exhibits 2, 3 and 5*** - *paragraphs 1.1(g)*

12. HUD terminated the Plaintiffs' HAP contracts on each of the properties.

13. The Defendant's counter claims arise solely out of an alleged breach of each of the three HAP contracts.

14. Because Shaki Alli was not a party to the Riverside or Collingwood HAP contracts, she cannot be liable for any of the alleged damages asserted by the Defendant in its counterclaims.

15. Because Benjami Alli was not a party to the Collingwood HAP contract, he cannot be liable for any of the alleged damages asserted by the Defendant in its second counterclaim.

16. Even if the Defendant was to prove that Plaintiffs breached the HAP contract and/or the Regulatory Agreements, neither the HAP contracts nor the Regulatory Agreements provide for reimbursement of relocation expenses as a result of Plaintiffs' alleged breach.

## BRIEF IN SUPPORT OF MOTION

Plaintiffs, as the owners of the three properties referenced in the Proposed Findings of Uncontested Fact, filed this lawsuit against the United States of America for breach of the respective HAP contracts. In response, the Defendant filed a Counter Complaint alleging that it suffered compensable damages as a result of Plaintiffs' breach of the HAP contracts. ***Exhibit 1*** *- paragraphs 53-146* The only relationship between the parties is contractual, i.e. as a result of the HAP contracts. Because the HAP contracts (and attendant Regulatory Agreements) do not provide a remedy for Defendant to collect alleged damages for relocation expenses, summary judgment on the Defendant's counter claims is appropriate.

## FACTS

### I. Pingree property

On June 24, 1983, Benjamin Alli and Shaki Alli, the individual Plaintiffs in this matter, purchased the Pingree property from HUD as a part of a HUD property disposition sale. Concurrent with the purchase of the property, Benjamin Alli and Shaki Alli entered into a HAP contract for Section 8 payments on the Pingree property. ***Exhibit 5*** The Pingree HAP contract provides that HUD will provide rental assistance for the qualified tenants of the Pingree property. When the contract expired, the Allis and HUD entered into a series of extensions, the last of which expired on June 24, 2000. Prior to the expiration of the contract, HUD unilaterally terminated the Pingree HAP contract and relocated the tenants, by providing them with Section 8 vouchers and finding alternative housing for them. After the relocation process was finished, HUD terminated the Pingree HAP contract. The United States now seeks to collect, as damages for breach of contract, the costs of the relocation process.

**II. Collingwood property**

On June 9, 1989 BSA Corporation[1] (hereinafter "BSA") purchased the Collingwood property from a private party, L&R Realty Limited Partnership. As part of the purchase, BSA assumed the Collingwood HAP contract between L&R Realty Limited Partnership and HUD. *See **Exhibit 3** - Collingwood HAP contract, p. 1 and **Exhibit 1** - Defendant's Counter Complaint, paragraph 73* HUD also held a purchase money mortgage for the Collingwood property.

When the initial HAP contract expired, BSA and HUD entered into an agreement to extend the contract March 15, 2000. Prior to the expiration of that contract, HUD suspended its obligations pursuant to the contract and ceased all payments to BSA. HUD declared an "involuntary mortgagee-in-possession" and denied BSA possession of its property. ***Exhibit** 1 - Defendant's Counter Complaint paragraphs 92-95* HUD then relocated the tenants. The United States now seeks to collect the costs of the mortgagee-in-possession administrative costs as well as the costs for relocating the tenants for an alleged breach of the Collingwood HAP contract.

**III. Riverside property**

Benjamin Alli, doing business under the assumed name BSA and Associates, purchased the Riverside property from HUD in 1989. On June 8, 1989, Benjamin Alli, doing business under the assumed name BSA and Associates, entered into a HAP contract for the Riverside property with HUD. ***Exhibit 2*** The Riverside HAP contract had an expiration date of June 7, 2004. ***Exhibit 2** - Riverside HAP contract, paragraphs 1.1(a) and 1.2(a)* Prior to the expiration of the contract, HUD suspended the Section 8 payments and relocated the tenants. HUD then terminated the Riverside

---

1 BSA Corporation and BSA and Associates are two, distinct entities. BSA Corporation was incorporated by the State of Michigan on November 26, 1986. BSA and Associates is simply an assumed name.

HAP contract. ***Exhibit 7*** The United States seeks reimbursement for the cost to relocate the tenants as the result of an alleged breach of the Riverside HAP contract.

**ARGUMENT**

**I. STANDARD OF REVIEW**

Plaintiffs bring this motion pursuant to Court of Federal Claims Rule 56, which provides, in pertinent part, that a party is entitled to summary judgment if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". (See also *Cienega Gardens v. United States*, 194 F.3d 1231 (1998)

**II. SHAKI ALLI IS NOT A PARTY TO THE COLLINGWOOD AND RIVERSIDE HAP CONTRACTS, AND IS THEREFORE NOT LIABLE ON DEFENDANT'S FIRST AND SECOND COUNTERCLAIMS**

The parties to the three contracts are:

Pingree: HUD and Benjamin Alli and Shaki Alli (***Exhibit 5***)

Collingwood: HUD and BSA Corporation (***Exhibit 3***)

Riverside: HUD and Benjamin Alli d/b/a BSA and Associates (***Exhibit 2***)

Shaki Alli is not a party to the Collingwood and Riverside HAP contracts. Despite this fact, the United States has brought three counter claims against Shaki Alli. ***Exhibit 1***, *pages 18-22* The Collingwood HAP contract between HUD and BSA Corporation clearly does not include Shaki Alli. A corporation is a separate legal entity, with the ability to sue and be sued. Henne, Harry G., *Corporations, A Hornbook* , 2d Edition, West Publishing Co., 1976, p. 110

Further, the only parties to the Riverside HAP contract are HUD and Benjamin Alli d/b/a BSA and Associates. BSA and Associates was an assumed name of Benjamin Alli, registered with

the Wayne County Clerk's office in 1987. ***Exhibit 8*** - *Certificate-Conducting Business under an Assumed Name (Wayne County)* Based on the records of the Wayne County Clerk, Shaki Alli was never a associated with BSA and Associates. ***Exhibit 8***

Further, Shaki Alli never had any ownership interest in either Riverside or Collingwood. Collingwood was purchased by BSA Corporation from HUD, as the United States has admitted. ***Exhibit 1*** - *Defendant's Counter Complaint, paragraphs 72-73* Riverside was purchased from HUD by BSA and Associates. ***Exhibit 9*** - *Deed for Riverside, p. 2*

Clearly, Shaki Alli cannot breach a contract to which she is not a party. Therefore, summary judgment in favor of Shaki Alli with regard to Defendant's First and Second Counterclaims is appropriate.

## III. BENJAMIN ALLI IS NOT A PARTY TO THE COLLINGWOOD HAP CONTRACT AND IS THEREFORE NOT LIABLE ON DEFENDANT'S SECOND COUNTERCLAIM

Benjamin Alli is not a party to the Collingwood HAP contract. The only party is BSA Corporation. Therefore, Benjamin Alli is entitled to summary judgment on Defendant's Second Counterclaim

## IV. THE HAP CONTRACTS DO NOT PROVIDE DEFENDANT WITH THE REMEDY IT SEEKS

The United States brings its counterclaims pursuant to 28 USC §§1491, 1503 and 2508. ***Exhibit 1,*** *paragraph 53* Section 1491 is the Court of Federal Claims general jurisdiction statute. Section 1503 provides that this Court has jurisdiction over any "set-off or demand against any plaintiff in such court". Section 2508 provides this court with the authority to enter a judgment against a plaintiff in favor of the United States. None of these statutes provide any specific basis for

a counterclaim by the United States, they just provide the general jurisdiction and authority of the court.

The only relationship between the parties is contractual. Therefore, the only potential bases for a counter claim are the three HAP contracts. Defendant's Counterclaims clearly state that it is alleging: (1) a breach of the Riverside HAP contract (Defendant's First Counterclaim), (2) a breach of the Collingwood HAP contract and Regulatory Agreement (Defendant's Second Counterclaim) and (3) a breach of the Pingree HAP contract and Regulatory Agreement (Defendant's Third Counterclaim).

Each HAP contract contains an identical clause, paragraph 1.1(g). It states:

> (g) Scope of contract. This contract, including the exhibits, whether attached or incorporated by reference, comprises the ***entire agreement between the owner and HUD with respect to the matters contained in it***. Neither party is bound by any representations or agreements of any kind except as contained in this Contract, any applicable regulations, and agreements entered into in writing by the parties which are not inconsistent with this contract.
>
> ***Exhibits 2, 3 and 5***, *p. 2* (emphasis added)

The HAP contract also provides the parties' remedies in the case of a default. Section 2.21 (which is identical in all three contracts), states, in pertinent part:

> 2.21 DEFAULT BY PHA AND/OR OWNER
>
> * * *
>
> (b) Rights of PHA and HUD if Owner Defaults under Contract.
>
> (1) Events of Default
>
> A default by the Owner under this Contract shall result if:
>
> (i) The Owner has violated or failed to comply with any provision of, or obligation under, this Contract or of any

Lease, including failure to correct any deficiencies identified by the CA [HUD] in connection with any annual or other inspection; or

(ii) The Owner has asserted or demonstrated an intention not to perform some or all of its obligations under this Contract or under any Lease; or

(iii) For projects with mortgages insured by HUD or loans made by HUD, the Owner has violated or failed to comply with the regulations for the applicable insurance or loan program, with the insured mortgage, or with the regulatory agreement; or the Owner has filed any false statement or misrepresentation with HUD in connection with mortgage insurance or loan.

* * *

(3) <u>Corrective Actions.</u>

Pursuant to paragraph (b)(2) of this section the CA [HUD], in its discretion may take the following corrective actions either directly or in conjunction with or acting through a PHA:

(i) Take possession of the project, bring any action necessary to enforce any rights of the Owner growing out of the project operation, and operate the project in accordance with the terms of this Contract until such time as HUD determines that the Owner is again in a position to operate the project in accordance with this Contract. If the CA takes possession, housing assistance payments shall continue in accordance with this Contract.

(ii) Collect all rents and charges in connection with this operation of the project and use these funds to pay the necessary expenses of preserving the property and operating the project and to pay the Owner's obligations under the note and mortgage or other loan documents.

(iii) Apply to any court, State or Federal, for specific performance of this Contract, for an injunction against any violation of the Contract, for the appointment of a receiver to take over and operate the project in accordance with this Contract, or for such other relief as

may be appropriate. These remedies are appropriate since the injury to the PHA and/or HUD arising from a default under any of the terms of this Contract could be irreparable and amount of damage would be difficult to ascertain.

(iv) Reduce or suspend housing assistance payments.

(v) Recover any overpayments.

***Exhibits 2, 3 and 5**, pp. 17-19*

The Regulatory Agreement does not provide any additional remedies to the Defendant in the event of a default by the property owner. ***Exhibits 10 and 11***

In order to maintain a claim for damages resulting from a breach of contract, a plaintiff must prove that the damages were "foreseeable at the time the parties entered into the contract, which requires that they be the natural and proximate result of the breach." *Hughes Commun. Galaxies, Inc. v. United States,* 271 F.3d 1060, 1066 (Fed.Cir. 2001) Further, the interpretation of a contract must begin with the plain language. *M.A. Mortenson Co. v. Brownlee*, 363 F.3d 1203 (Fed.Cir. 2004)

The HAP contracts do not provide for reimbursement of relocation expenses. They very specifically provide the remedies available to HUD in the case of a breach by the owner of the property. Significantly, the HAP contracts provide HUD with the remedy of seeking injunctive relief from either state or federal court, but are silent as to what the basis for money damages may be. The United States cannot establish that reimbursement of relocation expenses was foreseeable at the time of the creation of the contract. The contract was drafted by HUD for the owner's signature. If it had contemplated money damages for managing and relocating tenants, it could have simply include it in the contract. Its failure to do so precludes its counterclaims in this case.

## CONCLUSION

Plaintiffs request that this Honorable Court enter summary judgment in their favor as to all of Defendant's counterclaims. Alternatively, Shaki Alli requests summary judgment in her favor on the First and Second Counterclaims (Riverside and Collingwood) because she is not a party to those contracts. Benjamin Alli requests summary judgment in his favor on the Second Counterclaim (Collingwood) because he is not a party to that contract.

STEMPIEN & STEMPIEN, PLLC

By: Eric Stempien
Attorney for Plaintiffs

Dated: August 15, 2005