EXHIBIT
Fanning 1
2-3-05 JS

Marcus & Millichap

# REAL ESTATE PURCHASE AGREEMENT

**THIS DOCUMENT IS MORE THAN A RECEIPT FOR MONEY. THIS DOCUMENT IS INTENDED TO BE A LEGALLY BINDING CONTRACT. READ IT CAREFULLY.**

Marcus & Millichap Real Estate Investment Brokerage Company of Detroit ("Agent") will on offer acceptance receive from Cory Fanning ("Buyer") the sum of $ 5,000 in the form of check. This sum is a deposit ("Deposit") to be applied to the purchase price of that certain real property and improvements referred to as Collingwood/Kirkwood Apartments (the "Property") generally located at 1610 Collingwood/1635 Calvert in the City of Detroit, County of Wayne, State of Michigan, and more particularly described as follows:

LEGAL TO BE ATTACHED

The Property shall also include Seller's interests in:

1. Any and all privileges and appurtenances pertaining to the Property, including any right, title and interest of Seller in or to adjacent streets, alleys or right(s)-of-way;
2. Any and all leases, licenses, occupancy agreements, permits, rents, warranties, guarantees or security deposits with respect to the Property, or any portion thereof;
3. Any and all tradenames used in connection with the Property.

## TERMS AND CONDITIONS

For the mutual covenants contained in this Real Estate Purchase Agreement ("Agreement"), Seller agrees to convey the Property to Buyer, and Buyer agrees to purchase the Property from Seller, on the following terms and conditions:

1) **PURCHASE PRICE:** The total purchase price for the Property ("Purchase Price") is **$675,000.**

2.1) **DEPOSIT:** The Deposit shall be credited to the Purchase Price of the Property at the Closing Date (as defined in paragraph 4 below) of this Agreement, and shall be held by Agent (as defined in paragraph 4 below) in trust for the benefit of the parties in a non-interest-bearing account (the "Deposit Account") at a banking institution designated by Agent, unless otherwise instructed by the Buyer and Seller in writing.

2.2) **DEPOSIT INCREASE:** With the removal of the contingencies set forth in paragraph(s) 8 - 9 hereof, Buyer shall increase the total Deposit in the Deposit Account to $20,000 dollars. Buyer's failure to timely increase the total Deposit as required hereunder shall be a material breach of this Agreement. The entire Deposit shall be credited to the Purchase Price at the Closing Date, unless otherwise provided herein.

2.3) **DEPOSIT TRANSFER:** Buyer's Deposit shall remain in trust until removal of the contingencies set forth in paragraph(s) 8 -9 hereof. Upon removal of said contingencies: (1) Buyer's Deposit shall be non-refundable,subject to paragraph 7.1; (2) the Deposit Account shall remain subject to the remaining terms and conditions of this Agreement; and, (3) upon the written instruction of Seller, the Deposit Account shall be transferred to the Seller. However, if the Property is made unmarketable by Seller, or by acts of God, then Buyer's entire Deposit shall be returned to Buyer.

3) **ADDITIONAL CASH DOWN PAYMENT:** Buyer shall make an additional cash down payment (in addition to the Deposit) to bring the total down payment amount to 15% of purchase price including financeable loan cost at the Closing Date.

4) **CLOSING DATE:** The completion of this Agreement and close of the transaction hereunder shall take place at the office of ("Closing Agent") located at TBD, unless otherwise agreed in writing by Buyer and Seller. Within 100 calendar days of the Effective Date of this Agreement, as defined in paragraph 33 below, Seller and Buyer agree to prepare, execute and cause to be delivered to the Closing Agent such instructions and other documents as may be necessary and appropriate to complete this Agreement and close the transaction. Should the instructions or other closing documents. if any, fail to be executed or delivered as required, Closing Agent shall, and hereby is, directed to close the transaction pursuant to the terms and conditions of this Agreement. "Closing Date" shall mean the date on which the document(s) transferring title to the Property to Buyer or Buyer's designee is recorded. All fees of the Closing Agent to close this transaction shall be paid equally by buyer and seller. All other closing costs shall be paid in accordance with the custom and practice in the county in which the Property is located.

5) **PRORATIONS:** Rents, real property taxes and assessments, premiums on insurance acceptable to Buyer, interest on any debt being assumed or taken subject to by Buyer, and any other income or expenses of the Property shall be prorated as of the Closing Date. Security deposits, advance rentals, and the amount of any future lease credits shall be credited to Buyer. Prepaid real estate taxes shall be prorated.

6) **TITLE:** Within 20 calendar days after the Effective Date of this Agreement, Seller shall furnish or cause to be furnished to Buyer a commitment for an A.L.T.A. fee owner's policy of title insurance ("Commitment") to be issued at the Closing Date by TBD (the "Title Company") for the Property. Within 5 calendar days following receipt thereof, Buyer shall either approve in writing the exceptions contained in said Commitment or specify in writing any exceptions to which Buyer reasonably objects. If Buyer objects to any exceptions, Seller shall, within 10 calendar days after receipt of Buyer's objections, deliver to Buyer written notice that either (i) Seller will, at Seller's expense, attempt to remove the exception(s) to which Buyer has objected before the Closing Date or (ii) Seller is unwilling or unable to eliminate said exception(s). If Seller fails to so notify Buyer or is unwilling or unable to remove any such exception by the Closing Date, Buyer may either (i) elect to terminate this Agreement and receive back the entire Deposit, in which event Buyer and Seller shall have no further obligations under this Agreement; or, alternatively, (ii) Buyer may elect to purchase the Property hereunder subject to such exception(s).



MI 1 - Copyright Marcus & Millichap 1998

**THE PARTIES ARE ADVISED TO CONSULT WITH THEIR RESPECTIVE ATTORNEYS CONCERNING THE LEGAL EFFECT AND VALIDITY OF THIS AGREEMENT PRIOR TO ITS EXECUTION.** The undersigned Buyer hereby offers and agrees to acquire the Property for the Purchase Price and upon the terms and conditions of this Agreement. This offer is made by Buyer to Seller on this 14 day of July, 1999. Buyer hereby acknowledges receipt of an executed copy of this Agreement.

**BUYER:** Cory Fanning **ADDRESS:** ______________________

______________________

**TELEPHONE:** ______________________

**SELLER'S ACCEPTANCE AND AGREEMENT TO PAY COMMISSION**

The undersigned Seller accepts the foregoing Buyer's offer, and agrees to convey the Property to Buyer or Buyer's designee for the Purchase Price and upon the terms and conditions of this Agreement. Seller hereby acknowledges receipt of an executed copy of this Agreement and authorizes Agent to deliver an executed copy to Buyer.

Seller hereby reaffirms Seller's agreement to pay Agent a real estate brokerage commission ("Commission") pursuant to the terms and conditions of that certain Representation Agreement between Agent and Seller dated which shall remain in full force and effect. Said Commission is payable to Agent in full by cash, certified check or cashier's check on or before the Closing Date. The Title Company is directed to make such payment to Agent from Seller's proceeds of the sale or exchange. The provisions concerning Agent's Commission may not be amended or modified without the written consent of Agent. Seller hereby grants to Agent the right to file a lien against the Property in the nature of a mechanic's lien to secure any amounts due to Agent.

**SELLER:** [signature] **ADDRESS:** ______________________

______________________

**TELEPHONE:** ______________________

**DATE:** 15 Jul 99

Agent accepts and agrees to the foregoing.

**AGENT: MARCUS & MILLICHAP REAL ESTATE INVESTMENT BROKERAGE COMPANY OF DETROIT**

**BY:** [signature] **ADDRESS:** ______________________

**DATE:** ______________________ ______________________

| NO REPRESENTATION IS MADE BY AGENT AS TO THE LEGAL, FINANCIAL, TAX OR OTHER EFFECTS, OR THE VALIDITY OF, ANY PROVISION OF THIS AGREEMENT. AS A REAL ESTATE BROKER, AGENT IS QUALIFIED TO GIVE ADVICE ON REAL ESTATE MATTERS ONLY. IF YOU DESIRE LEGAL, FINANCIAL, TAX OR OTHER PROFESSIONAL ADVICE, CONSULT YOUR ATTORNEY, ACCOUNTANT, TAX OR OTHER PROFESSIONAL ADVISOR. |
|---|



ML1 - Copyright Marcus & Millichap 1998