Case 1:01-cv-00689-FMA Document 68-2 Filed 09/14/2005 Page 1 of 11

*Secretary-Held Servicing*

*Directive Number:* [Prev Hit][Next Hit]**4335.2**

[Prev Hit][Next

CHAPTER 5 - FORECLOSURE

5-1. FIELD OFFICE RESPONSIBILITIES BEFORE RECOMMENDING FORECLOSURE

Foreclosure, or the threat of foreclosure, should not be used unless the office intends to foreclose. Foreclosure is the last resort after it is evident that the mortgagor cannot, or will not, meet the mortgage obligation. Before recommending foreclosure:

A. Assure that all required and reasonable servicing actions have been undertaken and efforts exhausted.

B. Encourage sale, by the mortgagor, as an alternative to foreclosure (this includes sale by assumption of the mortgage), but do not delay foreclosure for this reason.

C. Suggest the offering of a deed-in-lieu of foreclosure by the mortgagor (see Paragraph 5-8 on deeds-in-lieu). (This does not apply to investors.)

The encouragement of a sale or the suggested offering of a deed-in-lieu of foreclosure should be by active (if possible face-to-face) and direct methods rather than passively subsuming it in the text of a letter without explanation or elaboration.

D. If the field office determines that the property has little, or no, residual value, the case should be placed on an inactive status and foreclosure avoided.

E. Where there are high municipal liens on a vacant/abandoned property, which would prove a major liability to anyone acquiring title, placement of a property on an inactive status may also be an appropriate alternative, though the property has substantial residual value.

5-2. PROCEEDING TOWARDS FORECLOSURE. Foreclosure actions start with the preparation of a Notice of Intention to Foreclose.

A. Before determining the amount required to bring the mortgage current:

1) On all accounts with account numbers beginning with 07, check Loan Screen 2 (LNS2) for the Code 12 indicating that a Post Audit has been completed. Call the Service Center to request a Post Audit if the Code 12 is missing.

2) If the account is a Graduated Payment Mortgage (GPM), notify the Service Center to have the account adjusted before preparing figures.

This amount should include all known charges against the account, for example: taxes paid but not posted. Perform a manual escrow analysis, taking into account any shortages or excess funds.

B. Complete and mail a Notice of Intention to Foreclose and Accelerate Mortgage Balance and to Report to Credit Bureau (NOI), giving the bring-current amount and 30 days to respond. The NOI must be sent to the mortgagor by certified mail. (See Exhibit 5-1.1). This is a new NOI and previous versions are obsolete.

NOTE: If the mortgagor has filed a Petition in Bankruptcy, the Acceleration Notice may not be sent to the mortgagor while the bankruptcy stay is effective. (See Bankruptcy, Section 9).

C. At the time the NOI is sent, the field office must file-maintain Loan Screen One (LNS1):

1) Change the Pay Option Code to 9 to stop the sending of bills;

2) Enter 21 (Accept no Payments) and 38 (Send no Mail) in the Condition Codes to alert the System not to accept and apply any partial payments, or send mail.

NOTE: The field office may annotate LNS3, under comment, with the amount it considers substantial enough to consider reinstatement.

D. Substantial Payments. In the case of the original mortgagor the substantial payment should, at least, clear up the delinquency under the prior forbearance agreement, or as much as 50 percent of the mortgage delinquency, whichever is greater, unless the field office determines that a lesser amount is appropriate.

E. Acceptance of a Partial Payment after Mailing the NOI.

1) If the mortgagor tenders less than what the field office considers a substantial payment towards the delinquency, it should be accepted. But, if the field office desires to continue with foreclosure, send a new NOI containing both a new bring-current amount, and substantial payment amount, to the mortgagor before requesting foreclosure. (See Exhibit 5-1.2.)



[Prev Hit][Next

NOTE: This does not necessitate an extension of the 30-day period, if reinstatement doesn't occur; however, the NOI should state that the money will be applied against the delinquency-but does not satisfy the amount needed to consider reinstatement, and make it clear that the original 30-day term applies.

2) Where the amount tendered represents a significant proportion of the "substantial payment" the field office, at its discretion, may grant an 30-day term to allow for

resolution

NOTE: The field office shall not use this procedure to incrementally make up the entire delinquency by stringing the mortgagor along beyond that point which, originally, would have been viewed as a substantial amount subject to 2 D.1 (above).

F. The System is designed to treat payment as an exception when a Code 21 is in place. Therefore, OFA's Single Family Notes Branch's Cash Control Staff will contact the Field Office to inform you of the payment's receipt. All payments received prior to actual recommendation of foreclosure shall be accepted. The field office must than decide whether to:

1) Act in accordance with 5-3., below, or

2) Continue to foreclose after following the instructions in this section (2).

5-3. MORTGAGOR RESPONSE TO THE NOI. The period between the sending of the NOI and the actual referral of a case to foreclosure is not the last opportunity for resolution. However, it may be the last opportunity to avoid incurring foreclosure costs by HUD.

A. If the mortgagor responds to the Notice, the field office shall withhold further action leading to foreclosure under the following conditions:

1) The account is fully reinstated.





2) The account is paid in full.

3) The mortgagor tenders an acceptable deed-in-lieu of foreclosure. (The deeding is not complete until actual title approval.)

4) The mortgagor has entered into a contract with a purchaser which will result in one of the following within 60 days:

a. Payment in full.

b. Full reinstatement through assumption.

c. Assumption without full reinstatement acceptable to the field office. (See 5 below.)

d. If the mortgage is being assumed by a mortgagor who is not an owner-occupant, the mortgage must be brought current.

5) The mortgagor, or occupant assumptor, makes a substantial lump-sum payment towards the delinquency and enters into a forebearance agreement.

If the mortgage has been held by the Secretary for more than 36 months, or in the case of an assumptor, the forbearance agreement must provide for no less than a regular mortgage payment.

B. If resolution is accomplished, change Pay Option Code to 4, remove Condition Codes 21 and 38, and establish the forbearance screen (if appropriate). If a deed-in-lieu is accepted, see Section 8 of this chapter.

5-4. INITIATING FORECLOSURE

A. If resolution does not occur, or if the mortgagor does not respond after issuance of the NOI, the field office must promptly recommend foreclosure after the 30-day period expires.

NOTE: Due to the terminal nature of a foreclosure action recommendations must be fully supportable. Recommendations made to achieve goals, in lieu of appropriate servicing activities, will not be tolerated. Similarly, system encoding must accurately reflect case status. Each recommendation must have supervisory review and approval, and that review may not be of a cursory nature nor a superficial inspection of the Foreclosure Checksheet, HUD-92218, (Exhibit 5-2).





B. In most cases forward the original foreclosure recommendation to the Office of General Counsel, Home Mortgage Insurance (GHH) using the memorandum in Exhibit 5-3 along with the Tax Data Card or data from CPPS; a copy of the NOI; and, a completed foreclosure checksheet. A completed HUD-698, Statement of Account, and all pertinent legal instruments required for foreclosure processing must also accompany the recommendation. If the original Title File is unavailable the field office must obtain certified copies of the legal instruments.

EXCEPTION: Only GPMs, Bulks, and other special loans shall continue to be forwarded to OFA. All other cases must be forwarded to OGC. Remember to submit the legal file with your recommendation. Instructions for the preparation of the HUD-698 are contained in Exhibit 5-4.

C. Send a copy of the complete foreclosure recommendation and checksheet to the Single Family Servicing Division in Headquarters.

D. Simultaneously, file maintain Loan Screen One (LNS1) of the SFMNS by entering a Status Code 41, and annotate Loan Screen 3 (LNS3) with the date foreclosure documents were sent to OGC.

E. If the account is receiving Section 235 assistance, suspend the subsidy by file maintaining the C235 trailer. (See the SFMNS Users Guide, at 4-31b, for further guidance.)

F. Check the system's HSTY screen to determine whether payments have inadvertently been applied. If so, follow instructions at 5-2.E (above).

5-5. ACTION BY THE OFFICE OF GENERAL COUNSEL

A. The account will be assigned to a foreclosure agent by OGC. That agent is under contract to HUD to foreclose the mortgage.

B. Field offices will receive a copy of OGC's referral to the agent. Only if the field office does not receive that copy within 60 days of the date on LNS3 (see 5-5A., above) should any inquiry be made of OGC regarding the case's status. Once that copy is received, no inquiry shall be made of OGC except in cases of suspensions or termination of foreclosure, or bankruptcy.





C. Foreclosure attorneys are required to obtain updated 698 data just prior to foreclosure and, with the exception of bidding instructions related to efforts to avoid acquiring title at the foreclosure sale, there should be no other direct contact with the foreclosing agent or the foreclosing attorney. All other contacts with these agents are to occur through OGC, with the exception of the notices of occupied or vacant conveyance (an informal notification to the foreclosing attorney may supplement this only where the foreclosure sale is imminent). The foreclosing agent will be requested to notify the field office whether the property is occupied or vacant.

NOTE: If the property is occupied, the Property Disposition Section shall commence the occupied delivery procedures as prescribed in outstanding instructions (memorandum entitled: Occupied Conveyance, dated August 15, 1984). Unless notified to the contrary, the foreclosing agent will convey the property to HUD unoccupied.

5-6. SUSPENSION OR TERMINATION OF FORECLOSURE

If a suspension or termination of foreclosure is desired, after the foreclosure recommendation has been sent to OGC, contact OGC immediately by phone (FTS 755-7080), with confirmation in writing (do not send a copy to OFA). Under no circumstance shall the foreclosure agent, the attorney, or OFA be contacted directly. Contact OGC when partial payments have been inadvertently applied to the mortgagor's account.

A. Reasons for Suspension of Foreclosure

1) Filing bankruptcy

2) Fruitful negotiations with the mortgagors which will lead to a resolution similar to those described in 5-3A (above), but which may extend beyond the date of the sheriff's sale.

3) Regional or Headquarters review, for cause, of a case in foreclosure.

B. Reasons for Termination of Foreclosure

1) The mortgagor performed adequately under and outside of the bankruptcy plan.

2) Reinstatement, payment-in-full, etc. has occurred. (Foreclosure costs incurred by the Department must be secured from OGC and considered as part of the resolution.)

3) The condition of the property has been found to meet the criteria for placement under inactive status.

4) Acceptance of a deed-in-lieu of foreclosure. At the request of the field office, OGC will instruct the foreclosure agent to prepare and record the deed. As part of its foreclosure processing, the foreclosure agent will have determined whether there are any other outstanding liens.

C. SFMNS File Maintenance Requirements when Foreclosure is Terminated.

When foreclosure has been terminated:

1) Remove Condition Codes 21 and 38, and Status Code 41; and,

2) Except for inactive cases, change the pay option code to 4.

NOTE: In the case of a reinstatement, check that reinstatement funds have been applied (and, where applicable, a forbearance agreement established) to avoid the mortgage being billed as delinquent.

5-7. SPECIAL FORECLOSURE SITUATIONS. Vacant Properties, Rentals, and Junior Liens (Special conditions not described below may require the field office to seek advice from the Secretary-Held and Counseling Services Branch, Headquarters (HSSL) before action).

A. Abandoned or Vacant Properties.

1) The mortgagor's intent to protect the property should be determined by contacting him/her. Under unusual circumstances, it might be necessary for HUD to protect and preserve the property when the mortgagor is unable or unwilling to take protective measures.

2) If the only payments being applied to the account result from assistance or buy-down, then:





a. The Section 235 assistance must be suspended and reversed to when the vacancy occurred (unless the vacancy is temporary and approvable); or,

b. The buy-down escrow agent should be informed, in writing, to suspend remittances until further notice. After foreclosure (or a deed-in-lieu) is completed, the field office must make demand of the escrow agent for the escrowed funds.

In both situations, noted above, OFA must be notified.

3) Initiate foreclosure once it has been firmly established that the property has been abandoned or vacant for more than 60 days, and the mortgagor cannot be located.

4) In the foreclosure recommendation, advise OGC that the property has been vacant for more than 60 days, and the mortgagor cannot be located.

5) Immediately, request Property Disposition to take protection and preservation measures to avoid depreciation and vandalism. The mortgagor continues to own the property until title has been transferred. Also, be sure that no personal property, regardless of its condition, is removed from the property.

The only authorized expenditures are for securing the property, this does not include yard maintenance. The Department is to merely take actions required to protect its mortgage security, as permitted by the mortgage instrument. HUD Handbook 4310.5, Property Disposition Handbook, paragraph 95, provides procedures and authority for protection and preservation of SH mortgaged property.

B. Rental Property. Providing that servicing standards have been met, the fact that the property is occupied by other than the homeowner should not be a deterrent to recommending foreclosure.

1) Occupancy, even by other than the mortgagor, may reduce the potential of vandalism.

2) Prior to accepting rental payments from tenants of the mortgagor, field offices must consult field counsel.



[Prev Hit][Next

If counsel approves field offices may accept rent or other payments from non-owner occupants when tendered on a delinquent account. However, such payments must be clearly identified and placed in an escrow account to be applied or disbursed depending on the accounting after final disposition of the foreclosure. Such receipt should be sent directly to the Post Insurance Division, AFMP, with a covering instructional memorandum.

C. Foreclosing Junior Liens. Most SHMs are first liens and the foreclosure by a junior lien holder means that the field office will have to work with a replacement mortgagor. Field offices must be sure that they are familiar with all foreclosure laws for the states in which they have jurisdiction. Notice of a foreclosure action by a junior lien holder must be referred immediately to field counsel.

The replacement mortgagor must be viewed in the same way as an assumptor. That is, if the account is delinquent, it must be brought current either immediately or through a forbearance agreement.

The same conditions must be met as with an ordinary assumption that does not bring the account current (see 5-3A above). Failure to accomplish either requires the field office to recommend foreclosure.

D. Federal Interest in Junior Liens

1) Most junior liens are held by private parties. However, there are instances where the junior lien will be federally insured, or held by a federal agency. Such examples are Title I and

Section 312 loans.

2) It is not in HUD's interest to have a junior Title I or Section 312 loan foreclosed where there is an active and successful repayment plan addressing the problem of a delinquent SHM. Nor, would it be in HUD's interest to sue to collect on a judgment under similar circumstances.

3) Field offices must coordinate their collection activities with the best interests of the Secretary always in mind, especially where Title I or Section 312 loans are involved. Case records should be adequately "flagged" where HUD junior lien is known to exist. The SFMNS loan monitoring screen should be used for this purpose.





5-8. DEEDS-IN-LIEU OF FORECLOSURE. A deed-in-lieu, generally, is acceptable only if the property is free of all liens other than the Secretary-Held mortgage. This is because a deed-in-lieu obligates HUD to those junior liens. The deed should not be recorded until it is established by Field Counsel that there are no other liens.

However, the existence of a junior lien is not, of itself, reason to reject a deed-in-lieu. The fact that HUD is intent upon foreclosure can be used to negotiate compromises of smaller junior liens. As a "rule-of-thumb", if junior liens can be compromised for less than the foreclosure costs, they should. Seek guidance from Field Counsel.

If the office wishes to accept a deed-in-lieu when there are other liens, contact Field Counsel for approval after securing the title documents (see 5-8.B., below). One must remember that judgments against individuals are different from liens against the property, and seek guidance from Field Counsel.

A. General

1) A deed given before initiation of foreclosure will rarely affect the mortgagor adversely. When a deed-in-lieu of foreclosure is accepted HUD will not permit the property to be conveyed occupied.

2) Up to $200 may be authorized to be paid the mortgagor. The amount to be paid (if it is a part of the negotiation) must always be the minimum necessary to accomplish the objective. This amount is part of the total anticipated cost of foreclosure.

3) Generally a deed-in-lieu will not be accepted from a corporate mortgagor. Decisions to accept must be considered carefully, especially if the properties are being used for income production. This includes a mortgagor owning two or more properties subject to an FHA-insured mortgage or SHMs builder "bail-out" situations, or someone taking title through foreclosure of a junior lien.)

4) Generally, HUD will not accept a deed-in-lieu on the residual properties resulting from bulk-sales. HUD's intent in entering into bulk-sales agreements was not to take back the worst properties after the purchaser spun-off and sold the best. The mortgagor shall be informed that HUD will actively

pursue a deficiency judgment if foreclosure does occur. (Waiver of this policy may be requested of the Director, Office of Insured Single Family Housing, (HSS) where documentation will support an extension of mortgage term).



[Prev Hit][Nex

If the properties are deteriorated, they should be placed on inactive status, as you would any other property. If any irregularities are detected concerning the mortgagor's handling of a bulk sale mortgage (such as equity-skimming), the case should be referred to the Office of the Inspector General for investigation.

5) Need for a title search:

a. Deeds-in-lieu of foreclosure must be supported by a title search indicating no subordinate liens; or,

b. If a title search indicates subordinate liens, those liens must be able to be compromised for less than the cost of continuing foreclosure.

NOTE: Where the property is subject to a Section 235 Recapture Lien, a deed-in-lieu will not wipe-out the lien. However, the mortgagor's disposal of title, with no gain, eliminates the potential of recapture.

If a property is subject to Title I or Section 312 liens a deed-in-lieu does not wipe out those liens. Those liens must be satisfied prior to disposition. Loan management must discuss satisfaction of these liens with the other HUD program areas before the deed is accepted.

B. Legal Representation Involving Deeds-in-Lieu

1) If the case has been referred for foreclosure, inform OGC so it may have the foreclosure agent handle the matter. Otherwise, the field office is authorized to engage an attorney or title company to represent HUD. In the latter event, provide the following documents to the attorney or title company:

a. The original security instrument and note.

b. Title evidence held by the Secretary, if available.

c. Form HUD-2319, Attorney's Certificate of Title or, Title Policy, as appropriate.

d. Deed to Secretary, if one has been obtained, or a request that one be prepared for the mortgagor's(s') signature.

2) Marketable Title. Before preparation or recording the deed, the attorney of title company must examine the condition of the record title. The deed should not be recorded if there are outstanding encumbrances other than the HUD mortgage, current taxes and assessments, or customary easements, mineral reservations or restrictions of the type waived by Section 203.389 of the HUD Regulations.

3) Approval of Acceptance by Field Counsel. If encumbrances or liens appear on record, the Field Counsel must be consulted concerning acceptance of the deed. All particulars of the case, including all available information or status of the encumbrances, will be presented to the Field Counsel with the recommendation of the attorney or title company, and the field office with respect to possible compromise of the objectionable liens.

4) Satisfaction or Release from Liability. If there were no questions regarding marketability, or when the Field Counsel has approved acceptance of the deed-in-lieu where there are objectionable liens outstanding the attorney or title company will have a deed prepared, if not already provided by the mortgagors, and recorded after execution. At the same time, the Satisfaction or Release should be prepared for the field office's execution and recorded immediately following the deed-in-lieu.

5) Title Evidence.

a. Once the deed has been recorded, the attorney or title company, must provide title evidence to the date of recording that certifies good marketable title vested in the name of the Secretary of Housing and Urban Development, c/o (appropriate Field Office having jurisdiction) his successors and assigns. (If evidence is provided pursuant to the title binder program, it should insure the Secretary of Housing and Urban Development, c/o (appropriate Field Office having jurisdiction) his successors and assigns, or the Secretary's purchaser.) The type of title evidence can be no less than that customarily used in the area where the property is located.

b. The attorney or title company, should return the recorded deed, along with the new title evidence and bill for services and costs, to the field office. The recorded satisfaction or release should be given to the former mortgagor(s). The title docket and final title evidence should be submitted to Field Counsel for approval prior to being forwarded to the Property Disposition Branch.



[Prev Hit][Nex

5-9. BANKRUPTCY AND FORECLOSURE

A. Bankruptcy Petition. A Petition filed under the Bankruptcy Act operates as a "stay" which prohibits any activity to collect a claim against the debtor or to obtain possession of his property.

When the field office receives a Notice of Bankruptcy, there may be no further contact initiated by HUD with the mortgagor

concerning the existing delinquency. All collection efforts under the mortgage or forbearance agreement shall cease and neither the Notice of Intent to Foreclose nor the Occupancy Notice may be sent to the mortgagor. Follow the instructions outlined in Chapter 6.

B. Bankruptcies Occurring After a Case has been Referred to Foreclosure. OGC should be informed, immediately of the bankruptcy. Thereafter, all actions will be the responsibility of the foreclosure agent.

C. Bankruptcies Occurring Before the Sending of the NOI.

1) If, after the Payment Plan is commenced, all payments under or outside the plan are not received as scheduled for a 90-day period the field office should refer the case to OGC for foreclosure, but shall not send the mortgagor collection letters or a NOI. The field office may inform the mortgagor's attorney or the trustee of its intent.

2) If the mortgagor makes payments both inside and outside of the plan for a 90-day period, OGC will reassign the case to the field office for servicing pursuant to the terms of the Plan, and that payments, both inside and outside the Plan, should be sent to HUD pursuant to its instructions.

At this point, the field office would assume responsibility for monitoring of the account as outlined in Chapter 6.

D. Foreclosures After Bankruptcy.

If the bankruptcy case has been dismissed, or the mortgagor discharged by the Bankruptcy Court, a Notice of Intent to Foreclose may be sent to the mortgagor and the case treated like non-bankruptcy cases. A copy of the dismissal or discharge order must be attached to the request for foreclosure and forwarded to OFA along with your recommendation. The system codes must be updated, as appropriate, by inserting Condition Codes 21, 38, and Status Code 41. Delete Status Code 46.





RESERVED





RESERVED