IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| BENJAMIN & SHAKI ALLI AND BSA CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 01-669C<br>(Judge Allegra) |

DEFENDANT'S SUPPLEMENTAL BRIEF
PURSUANT TO THE COURT'S NOVEMBER 2, 2005 ORDER

Pursuant to the Court's November 2, 2005 order, defendant, the United States, respectfully submits the following supplemental brief in support of its motion for partial summary judgment and in opposition to the motion for partial summary judgment filed by plaintiffs, Benjamin and Shaki Alli and BSA Corporation.

The Court's November 2, 2005 order asked the parties to simultaneously submit supplemental briefs addressing the following two issues:

> a. Whether, as a matter of law, a government official's statement indicating disapproval of a proposed transaction may give rise to a breach of contract claim against his agency, where government regulations incorporated into the contract provide a detailed process for dealing with the approval/disapproval issue and that process was not followed? In addressing this issue, the parties should discuss any cases that focus more broadly on whether an official must be acting with authority in order to effectuate a government breach and shall discuss more specifically whether Mr. Brown was acting with authority at the time he made the statements alleged by Mr. Alli.
>
> b. Application of the standard for piercing the corporate veil under Michigan law, with particular attention paid to interpretation of the second prong of that standard, that "the corporate entity must be used to commit fraud or wrong."

## I. Under The Law, An Agent Of The Government Must Be Acting With Authority To Effectuate A Government Breach

It is well-established that the Government is not bound by the representations of its agents unless that agent had the actual authority to make such representations. Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947); Kiszka v. Office of Pers. Mgmt., 372 F.3d 1301, 1307 (Fed. Cir. 2004); Nematollahi v. United States, 38 Fed. Cl. 224, 231-32 (1997). Any party entering into an arrangement with the Government accepts the risk of correctly ascertaining the authority of the agents who purport to act for the Government. Merrill, 332 U.S. at 384. This rule applies even where the agent himself is unaware of the limitations upon his authority. Id.

The burden rests upon the plaintiff to show that the Government's agent was authorized to make the representations or take the action that caused the breach. Nematollahi, 38 Fed. Cl. at 231-32. The scope of a Government agent's actual authority "may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power." Merrill, 332 U.S. at 384. Accordingly, an agent for the Government does not have the actual authority to make representations that are contrary to any statute or regulation. Id. at 383-86. In other words, "[t]he actual authority of a Government employee to enter into an oral contract may be limited by statute or regulation." Ruttenburg v. United States, 65 Fed. Cl. 43, 48 (2005).

In Raines v. United States, 12 Cl. Ct. 530, 538 (1987), this Court found that the Government official's representations of higher yield amounts were unauthorized because those amounts were not in accordance with governing regulations. Likewise, in Merrill, the Supreme Court found that plaintiff's damaged wheat crop was not covered by Federal insurance regardless

of statements made by the agency because the regulations explicitly prohibited insuring the type of wheat damaged in plaintiff's crop. 332 U.S. at 383-86.

In Seaboard Lumber Co. v. United States, 45 Fed. Cl. 404, 409-10 (1999), this Court found that the Forest Supervisor's statements were unauthorized where the contract explicitly stated that actual authority lay with the Forest Service chief. Likewise, in Nematollahi, this Court found that HUD was not bound by the statements of a real estate broker regarding the quality of groundwater on a property purchased from HUD where the broker's statements were contrary to disclaimers in the contract, and the contract did not give the broker the authority to orally change the terms of the contract. 38 Fed. Cl. at 231-32. In Detroit Hous. Corp. v. United States, 55 Fed. Cl. 410, 416 (2003), this Court found that the Government was not bound by representations made in writing by the Government's agent where the contract did not provide the agent with the authority to alter the express terms of the contract.

Here, the issue of whether Mr. Brown possessed actual authority to approve or deny plaintiffs' TPA application never arises because plaintiffs did not submit a complete TPA application for the sale of the Collingwood apartments in the first place. Cory Fanning, the proposed buyer, was not even aware that a TPA application was required or that HUD's approval was necessary for the sale. Def. App. at 217-18, 219-21, 238-39.[1] This is important because a complete TPA application includes information and documents from the proposed buyer. Id. at 239-49. Indeed, the only document submitted to HUD regarding the sale of the Collingwood apartments to Mr. Fanning was a copy of an already-executed purchase agreement. Id. at 243-45.

---

[1] The appendix to Defendant's Motion For Partial Summary Judgment will be cited as "Def. App." followed by the specific page reference.

This purchase agreement was not contingent upon HUD's approval and, in fact, did not mention HUD at all. Id. at 113-14. Accordingly, it cannot be considered whether an individual, such as Mr. Brown, had the authority to deny a non-existent TPA application for the sale of the Collingwood apartments. Simply stated, neither Mr. Brown nor anyone else at HUD possessed authority to approve or deny that which did not exist.

Moreover, even if plaintiffs had actually submitted a TPA application, which they did not, plaintiffs cannot prove that Mr. Brown or anyone else at HUD's Detroit office had the authority to approve a TPA application for the sale of the Collingwood apartments to Mr. Fanning. HUD regulations provide that, depending upon the circumstances surrounding the proposed sale of the property, the authority to approve plaintiffs' TPA application may rest with HUD's regional office in Chicago or with its headquarters in Washington, D.C. Id. at 115-16. Because the level of approval depends upon information that was never submitted by plaintiffs or Cory Fanning to HUD, plaintiffs cannot show that actual authority to approve or deny their TPA application in writing rested with HUD's Detroit office. Id. Accordingly, judgment should be entered for defendant upon count VI of plaintiffs' second amended complaint as a matter of law.

## II. Because There Is A Genuine Issue Of Material Fact As To Whether The Corporate Veil Of BSA Corporation Should Be Pierced, Plaintiffs' Motion For Summary Judgment With Respect To Defendant's Counterclaim Against Benjamin And Shaki Alli For Breach Of The Collingwood HAP And Regulatory Agreements Should Be Denied

Plaintiffs move for summary judgment upon defendant's claims for breach of the Collingwood HAP and regulatory contracts against Benjamin and Shaki Alli and on defendant's claim for breach of the Riverside HAP contract against Shaki Alli.[2] Defendant concedes that its

[2] The Pingree HAP and regulatory contracts were executed by Benjamin and Shaki Alli as individuals.

claim for breach of the Riverside HAP contract should be dismissed against Shaki Alli only for lack of privity. The Riverside HAP contract was entered into by Benjamin Alli as an individual doing business as BSA and Associates. Therefore, Shaki Alli's claim for breach of the Riverside HAP contract against the United States and the United States' counterclaim against Shaki Alli for breach of the same contract should both be dismissed for lack of privity. See Erickson Air Crane Co. v. United States, 731 F.2d 810, 813 (Fed. Cir. 1984) (holding that the United States consents to be sued upon contract claims only by those with whom it has privity of contract).

However, judgment should not be entered for Benjamin Alli and Shaki Alli on defendant's claims for breach of the Collingwood HAP and regulatory contracts because genuine issues of material fact exist as to whether the corporate veil of BSA Corporation should be pierced.

A. Piercing The Corporate Veil Under Michigan Law

BSA Corporation was incorporated under the laws of Michigan, and Michigan state law applies regarding whether the corporate veil of BSA Corporation should be pierced. Compl. at 2; In re Cambridge Biotech Corp., 186 F.3d 1356, 1376 n.11 (Fed. Cir. 1999) ("When a court considers disregarding a corporate entity, i.e., 'piercing the corporate veil,' the court applies the law of the state of incorporation."). Generally, the law treats a corporation as a separate entity from its stockholders. Foodland Distributors. v. Al-Naimi, 559 N.W.2d 379, 380-81 (Mich. Ct. App. 1996). However, when the corporate form is used to subvert justice, it may be ignored by the courts. Id. There is no bright-line rule under Michigan state law delineating when the corporate entity may be disregarded. Id. Instead, the inquiry is fact intensive. The court must take the entire spectrum of relevant facts that form the background for the inquiry, and those

facts are to be assessed in light of the corporation's economic justification to determine whether the corporate form has been abused. Id.

The following standard applies to determine whether a corporate veil should be pierced:

> First, the corporate entity must be a mere instrumentality of another entity or individual. Second, the corporate entity must be used to commit a fraud or wrong. Third, there must have been an unjust loss or injury to the [party seeking to pierce the veil].

Id. (quoting SCD Chem. Distribs., Inc. v. Medley, 512 N.W.2d 86 (Mich. Ct. App. 1994)). Several factors may be considered in determining whether a corporate entity is a mere instrumentality of another. These factors include: undercapitalization of the corporation, commingling of funds, diversion of corporate assets for personal use, lack of corporate formalities, and complete domination and control over the corporation by another person or entity. Herman v. Mobile Homes Corp., 26 N.W.2d 757, 763 (Mich. 1947); Foodland Distributors, 559 N.W.2d at 381-82; Papo v. Aglo Rest. of San Jose, Inc., 386 N.W.2d 177, 185 (Mich. Ct. App. 1986). Not all of these factors must be established to pierce a corporate veil. In Papo, the court found that diverting corporate funds for personal use was enough to show the corporation was simply a mere instrumentality of another entity or individual. 386 N.W.2d at 185. Also, in Foodland Distributors, the court found that the corporation was the mere instrumentality of the defendant where the defendant was the owner and operator of the corporation, defendant loaned money back and forth between the corporation and his other businesses, and the corporation assumed $400,000 of defendant's personal debt with no consideration. 559 N.W.2d at 381-82.

Contrary to plaintiffs' assertions, fraud need not be shown to pierce the corporate veil.

See Herman v. Mobile Homes Corp., 26 N.W.2d 757, 763 (Mich. 1947) ("The trial court, notwithstanding the lack of actual fraud, properly found the parent company's domination and control so complete as to make the short-lived subsidiaries the mere instrumentalities and adjuncts . . . and correctly held [it] responsible for [the] contractual obligations to plaintiffs."); Papo, 386 N.W.2d at 185 ("The [Michigan] Supreme Court, on more than one occasion, has acknowledged that the corporate veil can be pierced in the absence of fraud.").

In Papo, the court pierced the corporate veil where the corporation was found to be a mere instrumentality of the defendant, and defendant's actions, which resulted in this finding, breached the equipment lease at issue in the case. 386 N.W.2d at 185. Also, in Herman, the court pierced the corporate veil to hold the parent company liable for the subsidiaries' breach of their contracts with plaintiffs where the parent company so completely controlled and dominated the subsidiaries that each of them was a mere instrumentality of the parent company. 26 N.W.2d at 763.

The Michigan Court of Appeals has held that the wrong committed by the corporate entity must be causally liked to the injury of the party seeking to pierce the corporate veil. Soloman v. W. Hills Develop. Co., 312 N.W.2d 428, 432 (Mich. Ct. App. 1981). Although the Michigan Supreme Court pierced the corporate veil in Herman without identifying a causal link between the defendant's abuse of the corporate form and the plaintiffs' injury, the Michigan Court of Appeals held in Soloman, 312 N.W.2d at 432, that "[a]lthough it is clear that the corporate form may be disregarded to prevent injustice and to reach an equitable result, we believe that the injustice sought to be prevented must in some manner relate to a misuse of the corporate form short of fraud or illegality." Most recently, in Daymon v. Fuhrman, 705 N.W.2d

347 (Mich. Nov. 10, 2005), several judges of the Michigan Supreme Court dissented from the majority's opinion rejecting defendant's application for leave to appeal a lower court's decision to pierce the corporate veil. The dissenting judges recognized that "this [c]ourt has never adopted clear standards for determining when the corporate veil should be pierced," and believed that the court should have granted leave to hear the appeal and consider whether the party seeking to pierce the veil failed to prove a causal link between any wrong or fraud committed and that party's injury. Id. at 348-49.

B. There Is A Genuine Issue Of Material Fact Regarding Whether The Corporate Veil Of BSA Corporation Should Be Pierced

Here, Benjamin and Shaki Alli: (1) had sole control over BSA Corporation; (2) admitted to making personal loans to BSA Corporation with no documentation or forms for repayment; (3) used the assets of BSA Corporation to secure personal loans for themselves; (4) used assets of BSA Corporation to make significant monthly payments to themselves for "leasing" their car to the corporation; and (5) used assets of BSA Corporation to make payments to themselves and their three children. Def. Br. Ex. 2, 3, 4, and 5.[3] Accordingly, a genuine issue of material fact exists as to whether BSA Corporation was the mere instrumentality of Benjamin and Shaki Alli.

Also, Benjamin and Shaki Alli's diversion of BSA Corporation's assets is causally linked to the injury suffered by the United States. As mentioned above, Benjamin and Shaki Alli diverted assets from BSA Corporation to themselves and their children. This included assets from the operating account for the Collingwood apartments, which were to be used for

[3] Exhibits to defendant's Opposition To Plaintiff's Motion For Partial Summary Judgment will be cited as "Def. Br. Ex." followed by the specific exhibits referenced.

maintaining the Collingwood apartments and required HUD's approval to be used.[4] As a result, those assets were unavailable to make necessary repairs to the Collingwood apartments. Indeed, plaintiffs admit that they sought to sell the Collingwood apartments to Mr. Fanning because BSA Corporation did not have the money to make necessary repairs to the buildings. Compl. at 5. Thus, plaintiffs failed to maintain the Collingwood apartments in a decent, safe and sanitary condition, breaching the HAP and regulatory contracts and causing HUD significant expenses in relocating tenants and repossessing the property.

The third element necessary to pierce the corporate veil is that there must have been an unjust loss or injury to the party seeking to pierce. Foodland Distributors, 559 N.W.2d at 381. Here, as a result of plaintiffs' failure to maintain the Collingwood apartments in a decent, safe and sanitary condition, the United States incurred significant expenses in repossessing the apartments and relocating the tenants to suitable housing. Accordingly, plaintiffs' motion that summary judgment be entered for Benjamin and Shaki Alli with respect to the Government's counterclaim for breach of the Collingwood HAP and regulatory contracts should be denied.

## CONCLUSION

For these reasons, the United States respectfully requests that the Court grant defendant's motion for partial summary judgment and deny plaintiffs' request for summary judgment on defendant's claim that Benjamin and Shaki Alli breached the HAP and regulatory contracts for the Collingwood apartments.

---

[4] For example, the $400 monthly car payments to Benjamin and Shaki Alli were diverted from the operating account. Despite HUD's demands to return the monies to the account, the monies were never returned. Moreover, the $50 an hour payments to their children were also diverted from the operating account.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Mark A. Melnick by Frank E. White, Jr.
MARK A. MELNICK
Assistant Director

s/ Marla T. Conneely
MARLA T. CONNEELY
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit,
8th Floor
1100 L Street, NW
Washington, D.C. 20530
Tel. (202) 307-1011
Fax. (202) 307-0972

Attorneys for Defendant

OF COUNSEL:

Thomas G. Massouras
Office of General Counsel
U.S. Department of Housing
& Urban Development
77 West Jackson Boulevard
Suite 2629
Chicago, Illinois 60604

December 2, 2005