UNITED STATES OF AMERICA

COURT OF FEDERAL CLAIMS

BENJAMIN ALLI, SHAKI ALLI and
BSA CORPORATION, a Michigan Corporation

Plaintiffs, Case No. 01-669C
Hon. Francis Allegra

vs.

UNITED STATES OF AMERICA,

Defendant.
_______________________________________/

STEMPIEN & STEMPIEN, PLLC
By: Gregory J. Stempien
Eric Stempien
Attorney for Plaintiff
315 N. Center Street
Suite 200
Northville, MI 48167
(248) 735-9200

DEPARTMENT OF JUSTICE, COMMERCIAL LITIGATION
By: Marla Conneely
Attorney for Defendant
1100 L Street N.W., Room 11054
Washington, DC 20005
(202) 307-0318
_______________________________________/

***PLAINTIFFS' REPLY TO DEFENDANT'S SUPPLEMENTAL BRIEF***

Plaintiffs, by and through their attorneys, hereby submit this Reply to Defendant's Supplemental Brief filed on December 2, 2005.

**I. Mr. Brown was acting with actual authority when disapproving the proposed sale of the Collingwood property to Cory Fanning; Defendant's reliance on the cases cited in its brief is misplaced**

In its brief, the government relies primarily on five cases to support its contention that Robert Brown's statement of disapproval did not give rise to a breach of contract claim. As stated in Plaintiffs' Supplemental Memorandum of Law, filed on December 2, 2005, a contracting officer is defined as the government representative with the authority to enter into, administer and/or terminate contracts and make related determinations and findings. *48 C.F.R. § 2.101 (2004)* The evidence clearly establishes that Robert Brown was the contracting officer as to all three properties at issue in this matter, and specifically as to the Collingwood property. The cases cited by the government do not change the fact that Mr. Brown had the authority to administer the Collingwood housing assistance payments contract and make related determinations and findings.

One of the cased the government cited by the Defendant is *Detroit Housing Corporation v. United States*, 55 Fed. Cl. 410 (2003). In that matter, the Plaintiff sought to recover the purchase price paid to the Department of Housing and Urban Development based on the fact that HUD did not reveal that a demolition order had been issued by the City of Detroit for the building being sold. The plaintiff sued for misrepresentation. The plaintiff relied on correspondence sent to it by HUD after the purchase agreement was signed. This Court held that "Plaintiff was not justified in relying on any alleged representation contained in the additional letters because they were not part of the contract". *Detroit Housing Corporation* at 416 The Court's reasoning and holding revolved only around the plaintiff's justification in relying on the correspondence drafted after the signing of the purchase agreement. The Court did hold that the senders of the correspondence were not authorized by the contract to alter the express terms of the contract. *Detroit Housing Corporation* at 416

However, this is not in any way analogous to the facts presented in this case. Here, it is clear that Mr. Brown was the contracting officer with all of the powers enumerated in 48 C.F.R. § 2.101 (2004). The issue in *Detroit Housing Corporation* was the plaintiff's justification for relying on a letter sent after the signing of the purchase agreement.

The Court of Claims case *Nematollahi v. United States*, 38 Fed. Cl. 224 (1997) also does not support Defendant's contention that Mr. Brown could not disapprove the proposed sale of the Collingwood property to Cory Fanning. That case also involved a claim for misrepresentation. In that matter, the plaintiffs relied on the oral statements of a real estate broker regarding the physical condition of the property purchased by the plaintiffs from HUD. The Court held that the real estate broker lacked the authority to bind the government to any statements. The Court also held that the contract itself did not grant the real estate broker the authority to alter the terms of the contract, which provided specific disclaimers regarding the condition of the property. This is factually distinct from the instant case. In this matter, the issue is not whether Mr. Brown had the authority to alter the contract (although, pursuant to 48 C.F.R. § 2.101 (2004) he probably did), but whether he had the authority to disapprove the sale to Cory Fanning and make related findings and determinations. In *Nematollahi*, the real estate broker was never given any contract authority. Here, Mr. Brown was authorized to sign the contracts, to terminate the contracts and to extend the contracts.

The case of *Seaboard Lumber Co. v. United States*, 45 Fed. Cl. 404 (1999) is also distinguishable. In that case, the Court found that the contract granted authority only to the Forest Service Chief, not the Forest Supervisor. Here, Mr. Brown was the contracting officer, and as such had the authority to make the relevant findings and determinations.

In *Raines v. United States*, 12 Ct. Cl. 530 (1987), this Court addressed whether government was bound by a contract which contained a mathematical error regarding the proper payment to a farmer pursuant to an act of Congress authorizing payments for destruction of crops. The Court, relying on *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380 (1947) (also cited by Defendant), held that the government was not required to honor the original contract (which contained the error) because the "government agent made representations that were beyond the scope of his regulatory authority" *Raines* at 539 The Court further held that "it is not disputed in this case that the higher PIK [payment-in-kind] compensation was beyond the scope of the [government] official's regulatory authority to offer plaintiffs". *Raines* at 539 The regulations provided specific formulae to determine the proper payments to participants in the program; there was no discretion. The plaintiffs argued that the government should be estopped from asserting a defense due to their reliance on the initial contract. Both parties agreed that the initial contract was in error, it was only a matter of enforcement.

Here, the issue is much different. Mr. Brown had the regulatory and contractual authority, as the contracting officer, to make the findings and determinations necessary to approve or disapprove the proposed sale. This case is not about whether the government is bound to an erroneous contract or decision by one of its officials. Mr. Brown made a discretionary decision to disapprove the sale, something within his authority. Therefore, the analysis of *Raines* does not apply.

Once it is determined that Mr. Brown was the contracting officer[1], his authority extends to all of those powers enumerated in 48 C.F.R. § 2.101 (2004). The cases cited by the Defendant are not

1 This is clearly established by the fact that he signed the contracts, he terminated the contracts and he extended the contracts at issue in this lawsuit. The government does not argue that he lacked the authority to perform all of those acts as it relates to the Colllingwood contract.

factually similar to this matter. The holdings in *Nematollahi* and *Detroit Housing Corporation* relate only to the authority of a government representative to alter the terms of a contract, in light of the clear mandates of the contract that it cannot be altered and the various "as is" disclaimers. *Seaboard Lumber Co.* only provides the general rule that an unauthorized government official cannot bind the United States. And the *Raines* analysis does not apply because that case involved a mathematical calculation error by a government official based on a formula provided in the regulations. In this matter, the authorized government official made a discretionary decision to disapprove a proposed sale. Construing the facts in the light most favorable to the plaintiffs[2], summary judgment is not appropriate.

**II. Piercing the corporate veil**

In its brief, the government states "contrary to Plaintiffs' assertions, fraud need not be shown to pierce the corporate veil". *Defendant's brief, p. 6* Plaintiffs do not assert that the only basis for piercing the corporate veil is fraud. However, there must be facts to demonstrate more than a mere breach of contract claim to support the second prong of the test.[3] Defendant cites two cases to support its contention that a breach of contract alone provides a basis for piercing the corporate veil, *Herman v. Mobile Homes Corporation*, 317 Mich 233; 26 NW2d 757 (1947) and *Papo v. Aglo Restaurants*, 149 Mich App 285; 386 NW2d 177 (1986)

In *Herman,* the Michigan Supreme Court addressed the issue of whether a parent corporation could be held liable for the breach of contract by one of its subsidiaries. In holding that piercing the

---

2 See *Nematollahi* at 230

3 Please see Plaintiff's Supplemental Memorandum of Law for a complete discussion of *Klager v. Robert Meyer Co.*, 415 Mich 402; 329 NW2d 721 (1982).

corporate veil was appropriate, the Court relied on much more than just the mere fact that the Defendant had breached the contract. The Court's analysis focused on the parent corporation's relationship with the subsidiaries. The Court held that the subsidiaries were "operated as 'mere departments' of the Currier Company", and as such the parent corporation was responsible for the subsidiaries' debt. *Herman* at 247 Further, the Court was persuaded by the fact that "there is to be found in the record a recurring element of Currier Company's recognition and acknowledgement of its own responsibility to plaintiffs". *Herman* at 244

In *Papo*, the Court again analyzed a parent corporation's liability for a breach of contract by its subsidiary. The Court allowed the plaintiff in that matter to pierce the corporate veil and held the parent corporation liable for its subsidiary's breach. The Court found significant the testimony from a representative of the parent corporation that the subsidiary was a separate and distinct entity "[only] to the degree they are technically different, but operated by us". *Papo* at 301 Further, it was the parent corporation who physically removed the equipment that was the basis for the breach of contract lawsuit. The cases involving parent/subsidiary piercing involve, as stated by the *Herman* Court, a conclusion that the subsidiary is a "mere department" of the parent. This analysis is not applicable in this matter because BSA Corporation is not owned by a parent corporation and cannot be said to be a "mere department" of anything or anyone.

Both parties have provided the Court with the applicable Michigan case law that makes clear that a decision to pierce the corporate veil rests on the individual facts of each particular case. The decision is fact-driven. The party seeking to ignore the corporate entity must demonstrate a factual basis. Here, the government has not provided any facts that support piercing the corporate veil of BSA Corporation. Each of the instances enumerated by the Defendant are not evidence of any fraud

or wrongdoing by the Allis.[4]

STEMPIEN & STEMPIEN, PLLC

s/ Eric Stempien______________
By: Eric Stempien
Attorney for Plaintiffs

Dated: December 22, 2005

4 Please see Plaintiffs' Reply Brief in Support of Motion for Summary Judgment, pages 3-5, for a detailed analysis of the factual claims of fraud or wrongdoing.