IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BENJAMIN & SHAKI ALLI AND BSA CORPORATION,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | ) | 01-669C<br>(Judge Allegra) |

DEFENDANT'S REPLY TO PLAINTIFFS' SUPPLEMENTAL BRIEF PURSUANT TO THE COURT'S NOVEMBER 2, 2005 ORDER

Pursuant to the Court's November 2, 2005 order, defendant, the United States, respectfully submits the following reply to plaintiffs' supplemental brief in support of its motion for partial summary judgment and in opposition to the motion for partial summary judgment filed by plaintiffs, Benjamin and Shaki Alli and BSA Corporation.

## I. A TPA Application Is Not A Contract, And Plaintiffs Reliance On 48 C.F.R. 2.101 Is Misplaced

In their supplemental brief, plaintiffs argue that Robert Brown had actual authority to deny their oral request to sell the Collingwood apartments because Mr. Brown was a contracting officer, and, pursuant to 48 C.F.R. § 2.101, contracting officers have the power to "enter into, administer, and/or terminate contracts and make related findings and determinations." Pl. Supp. Br. at 3.[1] Even setting aside the fact that plaintiffs never submitted a TPA application to HUD and HUD regulations require any denial of a TPA application to be in writing, plaintiffs' argument still fails.

[1] Plaintiffs Supplemental Memorandum of Law, filed on December 2, 2005, will be cited as "Pl. Supp. Br." followed by the specific page reference.

First, title 48 of the Code of Federal Regulations was established for "the codification and publication of uniform policies and procedures for acquisition by all executive agencies." 48 C.F.R. § 1.101. "Acquisition" is defined in Title 48 as "the acquiring by contract with appropriated funds of supplies or services (including construction) by and for the use of the Federal Government through purchase or lease, whether the supplies or services are already in existence or must be created, developed, demonstrated, and evaluated." Id. "Contracting" for the purpose of defining "contracting officer" is defined as "purchasing, renting, leasing, or otherwise obtaining supplies or services from non-federal sources." Id. Accordingly, the definition of "contracting officer" as set forth in 48 C.F.R. § 2.101, defines that term as it would apply to contracts for goods and services, not for TPA applications.

Second, a TPA application is not even a contract. A contract with the Government requires mutuality of intent, consideration, lack of ambiguity in offer and acceptance, and actual authority of the Government agent to bind the Government to the contract terms. D&N Bank v. United States, 331 F.3d 1374, 1378 (Fed. Cir. 2003). None of these elements are present in a TPA application. A TPA application is simply a submission to HUD requesting approval to transfer physical assets upon which HUD holds a mortgage. Therefore, plaintiffs' argument that a contracting officer under 48 C.F.R. § 2.101 would have actual authority to approve or deny a TPA application is simply wrong.

II. Even If Mr. Brown Were A Contracting Officer And Approving A TPA Application Were Within The Powers Of A Contracting Officer, Which It Is Not, Plaintiffs' Still Cannot Show That Mr. Brown Possessed Actual Authority To Deny Plaintiffs' Oral Request To Sell The Collingwood Apartments Because Mr. Brown's Actions Would Be Contrary to HUD's Rules And Regulations

Assuming that 48 C.F.R. § 2.101 applies to Mr. Brown, which it does not, the regulation

provides that contracting officers have authority to enter into, administer, or terminate contracts and make related determinations and findings. 48 C.F.R. § 2.101. This authority, however, has limits. Contracting officers may bind the Government only to the extent of the authority delegated to them, and no contract is to be entered into unless the contracting officer ensures that all requirements of law, executive orders, regulations, and all other applicable procedures, including clearances and approvals, have been met. 48 C.F.R. § 1.602-1. This is consistent with the general rule that the Government is not bound by the representations of its agents that are contrary to statutes and regulations. For example, in Raines v. United States, 12 Cl. Ct. 530, 538 (1987), this Court found that the Government official's representations of higher yield amounts were unauthorized because those amounts were not in accordance with governing regulations. Likewise, in Merrill, 332 U.S. at 383-86, the Supreme Court found that plaintiff's damaged wheat crop was not covered by Federal insurance regardless of statements made by the agency because regulations explicitly prohibited insuring the type of wheat damaged in plaintiff's crop.

Here, HUD regulations clearly state that (1) a TPA application must be submitted to request HUD's approval of the sale of property upon which HUD holds a mortgage, (2) only complete TPA application will be considered, and (3) any denial of a TPA application will be in writing in a form explicitly set forth in the regulations. Def. App. 115, 145, 147. Therefore, if Mr. Brown had acted upon plaintiffs' oral request to sell the Collingwood apartments to Mr. Fanning, he would be acting contrary to governing regulations that require a TPA application to be submitted, reviewed and denied in writing when property upon which HUD holds a mortgage is transferred. As a result, Mr. Brown's alleged actions would be unauthorized, and the Government would not be bound by them.

Plaintiffs rely upon General Electric Co. v. United States, 188 Ct. Cl. 620 (1969) and Texas Instruments, Inc. v. United States, 922 F.2d 810 (Fed. Cir. 1990), to support their argument that, regardless of HUD regulations, Mr. Brown's alleged oral statements were an expression of a definite opinion concerning the merits of the proposed sale of the Collingwood apartments and therefore, was an authorized decision of a contracting officer. Pl. Supp. Br. at 5. However, the circumstances in General Electric and Texas Instruments are distinguishable and their holdings inapplicable to this matter.

General Electric involved a suit by a contractor to recover additional costs incurred while working on a contract containing a limitation of cost clause. The contracting officer for the contract concurred on internal correspondence that the contractor's requested overrun should be funded. 412 F.2d at 620. Shortly thereafter, authority for administering the contract was transferred to a different contracting officer, who the denied contractor's request because it was untimely and unsupported. Id. The Court of Claims held that while the limitation of cost clause prevented the Government from being obligated to reimburse the contractor without proper notice, it is within the contracting officer's discretion to allow the additional costs. Id. The court then examined the issue of whether any legal effect was to be given to the concurrence of the original contracting officer on the internal recommendation letter. Id. The court found that the original contracting officer was aware of the situation and that his concurrence on the internal recommendation letter was his decision to fund the overrun. Id. Specifically, the Court stated, "[u]nder the facts present here, we believe that when an authorized contracting officer expresses a definite opinion concerning the merits of a claim with knowledge of the relevant facts, a 'decision' has been made." Id.

Similar to General Electric, Texas Instruments involved the issue of whether a contracting officer's signature upon an internal document approving a negotiated price constituted a final decision by a contracting officer. In that case, the agency had an internal directive that such decisions be presented to a review board, a requirement which had not been satisfied. 922 F.2d at 813-15. In its opinion, the court recognized that "an agent of the Government may not bind the Government to an agreement when such an act is directly forbidden by U.S. law or regulations." Id. at 815. However, the court found that non-public internal directives do not divest contracting officers of their authority to bind the government and specifically distinguished such non-public internal directives from statutes and validly-issued regulations. Id.

Unlike this case, General Electric and Texas Instruments involved written decisions of contracting officers that were circulated internally within the agency. Here, by contrast, plaintiffs argue that the Government should be bound by oral statements made by Mr. Brown to plaintiffs. Also, neither General Electric nor Texas Instruments addressed the issue of whether a Government agent is authorized to act contrary to agency regulations. Instead, Texas Instruments held that a non-public internal directive did not divest a contracting officer of her authority. In this case, Mr. Brown's alleged actions are contrary to publicly available agency regulations, which are incorporated into the terms of the contract, not a non-public internal directive like in Texas Instruments. The court in General Electric found that, under the limitation of cost clause, the Government would not be obligated to fund an overrun without proper notice, but could fund the overrun if it choose to do so. While the actions of the contracting officer in General Electric did not violate any provision of the contract or any statutes or regulations, the alleged actions of Mr. Brown are directly contrary to agency regulations.

Plaintiffs also cannot establish that Mr. Brown, or anyone else in the Detroit Field Office had the authority to approve plaintiffs' TPA application, if one had been submitted. HUD regulations provide that, in certain circumstances, authority to approve a TPA application may rest with the regional office in Chicago or with headquarters in Washington, D.C. Def. App. 115-16. A complete TPA application would have contained the information necessary to determine whether the proposed sale of the Collingwood apartments fell within a category requiring approvals from the regional office and/or headquarters. Because a TPA application was never submitted, it cannot be determined whether the authority to approve a TPA application for the proposed sale of the Collingwood apartments to Mr. Fanning rested with the field office, the regional office or headquarters. Accordingly, plaintiffs cannot establish that Mr. Brown possessed actual authority to deny plaintiffs' oral request to sell the Collingwood apartments.

III. Contrary To Plaintiffs' Assertions, Michigan Law Does Not Require Fraud To Pierce The Corporate Veil, And Plaintiffs Did Use The Corporate Form To Commit A Fraud Or Wrong Upon Defendant

Plaintiffs rely upon the Michigan Supreme Court's holding in Klager v. Robert Meyer Co., 329 N.W.2d 721 (1982) to support their argument that the corporate veil should not be pierced with respect to the Government's breach of contract claims involving the Collingwood apartments. Plaintiffs cite Klager in support of their assertion that the corporate veil may not be pierced in a simple breach of contract case. Incredibly, in the same section of their brief, plaintiffs also cite to Papo v. Aglo Restaurants of San Jose, Inc., 386 N.W.2d 177 (1986), a case where the Michigan Court of Appeals held that the corporate veil should be pierced in a simple breach of contract case involving an equipment lease. Moreover, contrary to plaintiffs' assertions, Klager does not stand for the proposition that the corporate veil may not be pierced in

simple breach of contract cases. See Pl. Supp. Br. at 9.

In Klager, a partnership agreed to lease land from the plaintiff. 329 N.W. 2d at 722-23. The partnership wanted to use the land for a commercial purpose, but failed to have the land re-zoned for commercial use. Id. at 722-24. The lease contained a provision which allowed the partnership to terminate the lease if the land was not re-zoned by a specific date. Id. at 723. When that date arrived, the partnership did not want to terminate the lease in case the land was re-zoned in the future, but also did not want to be personally liable for the term of the lease if the land was not re-zoned. Id. To solve this dilemma, the partnership transferred its interest in the lease to a corporation, which was specifically created for the purpose of reducing the personal exposure of the partners in the partnership. Id. The plaintiff was well-aware of the circumstances at the time, knew the purpose of the corporation, and knew that the corporation was underfunded. Id. Nevertheless, the plaintiff assumed the risk and signed an agreement assigning the lease to the corporation so the partnership would not terminate the lease. Id. The land was never re-zoned and the corporation stopped paying rent on the lease. Id. at 724. Three years later, plaintiff sued the partnership, its individual partners, the corporation and its individual shareholders for back rent. Id. The Michigan Court of Appeals allowed plaintiffs to pierce the corporate veil, but the Michigan Supreme Court reversed the decision. In its opinion, the Michigan Supreme Court held that the plaintiff did not plead or prove at trial fraud or other violation because no evidence was introduced that defendants misrepresented the capitalization of the corporation or its intended purpose. Id. at 725. The court further found that the plaintiffs were not victimized by an abuse of the corporate form, but that the defendants merely exercised their bargaining power in offering to transfer the lease to a corporation instead of terminating the

lease as defendants had the right to do. Id. at 726. Importantly, the court recognized that piercing the corporate veil is not an appropriate issue to be determined on summary judgment because "[t]he entire spectrum of relevant fact forms the background for such an inquiry, and the facts are to be assessed in light of the corporation's economic justification to determine if the corporate form has been abused." Id. at 725.

The circumstances of this case are different from those in Klager. Here, the Government was unaware at the time of contracting that plaintiffs were using the assets of BSA Corporation, specifically, the Collingwood apartments, to secure large personal loans for themselves. The Government also was unaware at the time of contracting that plaintiffs were diverting proceeds from the operating account of the Collingwood apartments to themselves and their children. The Government also was unaware at the time of contracting that plaintiffs were commingling their personal funds with the funds of BSA Corporation. Accordingly, unlike the plaintiff in Klager, the Government was victimized by plaintiffs' abuse of the corporate form. Due to plaintiffs' diversion of assets from BSA Corporation, money was not available in the operating account for the Collingwood apartments to make repairs and maintain the buildings in a decent, safe and sanitary condition. As a result, plaintiffs breached the HAP and regulatory contracts for the Collingwood apartments, forcing the Government to incur significant expense in relocating all of the tenants to suitable housing. Accordingly, a genuine issue of material fact exists as to whether the corporate veil of BSA Corporation should be pierced, and plaintiffs' motion for partial summary judgment should be denied.

## CONCLUSION

For these reasons, the United States respectfully requests that the Court grant defendant's motion for partial summary judgment and deny plaintiffs' request for summary judgment upon the Government's claim that Benjamin and Shaki Alli are jointly and severally liable for BSA Corporation's breach of the HAP and regulatory agreements for the Collingwood apartments.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Mark A. Melnick by Frank E. White, Jr.
MARK A. MELNICK
Assistant Director

s/Marla T. Conneely
MARLA T. CONNEELY
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, NW
Washington, D.C. 20530
Tel. (202) 307-1011
Fax. (202) 307-0972

Attorneys for Defendant

OF COUNSEL:

Thomas G. Massouras
Sol T. Kim
Office of General Counsel
U.S. Department of Housing
& Urban Development
77 West Jackson Boulevard
Suite 2629
Chicago, Illinois 60604

December 22, 2005